HUDSON v MATHERS

Docket No. 280396. Submitted January 14, 2009, at Detroit. Decided March 19, 2009, at 9:30 a.m.

Kenyatta Hudson brought an action in the Wayne Circuit Court against Marshall Mathers (also known as Eminem), Ondre Moore, D-12, Inc., and others, alleging breach of management and partnership agreements. The court, Kathleen Macdonald, J., granted Moore summary disposition of the plaintiff's breach of contract claim against Moore and granted several of the defendants summary disposition of the plaintiff's unjust enrichment claim against them. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court did not err by dismissing the breach of contract claim against Moore. Under his agreement with Moore, the plaintiff was to be paid a fee for assisting Moore in making basic career decisions. Accordingly, the plaintiff qualified as a Type B personnel agency under article 10 of the Occupational Code, MCL 339.101 *et seq.*, and was required under MCL 339.1003(1) to be licensed. The plaintiff was not licensed and did not qualify for the exemption from licensing found in MCL 339.1003(2)(d).

2. The agreement with Moore provided that Georgia law governed it. The parties did not raise the choice of law provision, however, until more than 3¹/₂ years into the litigation. Generally, the parties' choice of law should be applied if the issue is one that the parties could have resolved by an express contractual provision, but exceptions exist. The parties' choice of law will not be followed if (1) the state chosen has no substantial relationship with the parties or the transaction or (2) there is no reasonable basis for choosing that state's law. The law of the state chosen will also not be applied when it would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue involved and whose law would apply in the absence of an effective choice of law by the parties. Both parties are Michigan residents, and they executed the agreement in Michigan. The plaintiff offered no evidence that Georgia has a substantial relationship to either the parties or the transaction. The trial court properly applied Michigan law and

dismissed the plaintiff's breach of contract claim against Moore because the plaintiff was not licensed as a personnel agency. Allowing the plaintiff to proceed against Moore under an equitable theory such as unjust enrichment would defeat the statutory bar to an action found in MCL 339.1019(b).

3. The court properly dismissed the plaintiff's unjust enrichment claim against the other members of D-12. Unjust enrichment requires a plaintiff to prove (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to the plaintiff resulting because the defendant retained the benefit. If that is proved, the law will imply a contract in order to prevent unjust enrichment, but only if no express contract covers the same subject matter. The express contract between the plaintiff and D-12 governed the plaintiff's entitlement to compensation for his work as a manager, so no contract may be implied under an unjust enrichment theory.

Affirmed.

1. AGENCY — PERSONNEL AGENCIES — CAREER ASSISTANCE — OCCUPATIONAL CODE — LICENSURE UNDER OCCUPATIONAL CODE — ACTIONS BY PERSONNEL AGENCIES.

A person who is to receive a fee for assisting another in making basic career decisions is a Type B personnel agency and must be licensed under article 10 of the Occupational Code; article 10 prevents a personnel agency from bringing an action for compensation for performing an act without alleging and proving that the agency and its agent are licensed under the article (MCL 339.1001[*l*], 339.1003[1], 339.1019[b]).

2. CONFLICT OF LAWS — CHOICE OF LAWS — CONTRACTS.

A court should apply the parties' choice of law provision if the issue is one that the parties could have resolved by an express contractual provision; the parties' choice of law will not be followed if the chosen state has no substantial relationship to the parties or the transaction or if there is no reasonable basis for choosing that state's law; a chosen state's law will also not be applied when it would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue involved and whose law would apply in the absence of an effective choice of law by the parties.

3. EQUITY — UNJUST ENRICHMENT — CONTRACTS — IMPLIED CONTRACTS.

If a plaintiff proves the defendant's receipt of a benefit from the plaintiff and an inequity resulting to the plaintiff because the

> defendant retained the benefits, the law will imply a contract in order to prevent unjust enrichment, but only if there is no express contract covering the same subject matter.

*The Sanders Law Firm, PC* (by *Herbert A. Sanders*), for Kenyatta Hudson.

*Plunkett Cooney* (by *Mary Massaron Ross, Hilary A. Dullinger,* and *Peter W. Peacock*) for Marshall Mathers and others.

Before: SAAD, C.J., and DAVIS and SERVITTO, JJ.

PER CURIAM. In this action alleging breach of management and partnership agreements between plaintiff and the various defendants, plaintiff appeals as of right, challenging the trial court's orders granting summary disposition of his breach of contract claim against defendant Ondre Moore under MCR 2.116(C)(10) and granting summary disposition of his unjust enrichment claim against several of the defendants under MCR 2.116(C)(10). We affirm.

This Court reviews de novo a circuit court's decision with regard to a motion for summary disposition. *Trost v Buckstop Lure Co, Inc,* 249 Mich App 580, 583; 644 NW2d 54 (2002). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Lewis v LeGrow,* 258 Mich App 175, 192; 670 NW2d 675 (2003). This Court " 'must consider the available pleadings, affidavits, depositions, and other documentary evidence in a light most favorable to the nonmoving party and determine whether the moving party was entitled to judgment as a matter of law.' " *Michigan Ed Employees Mut Ins Co v Turow,* 242 Mich App 112, 114-115; 617 NW2d 725 (2000), quoting *Unisys Corp v Ins Comm'r,* 236 Mich App 686, 689; 601 NW2d 155 (1999).

I. PLAINTIFF'S OBLIGATION TO OBTAIN A LICENSE

Plaintiff argues that the trial court erred by dismissing his breach of contract claim against Moore. We disagree.

The state of Michigan mandates licensing of all personnel agencies pursuant to MCL 339.1003(1), which provides: "A person shall not open, operate, or maintain a personnel agency in this state without first obtaining the appropriate license from the department."

MCL 339.1019(b) provides:

> A personnel agency, or any licensed agent or other agent or employee of a personnel agency shall not do any of the following:
>
> * * *
>
> (b) Bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for services as a personnel agency without alleging and proving that the agency and its agent were licensed under this article during the performance of the act or contract.

Under the Occupational Code, MCL 339.101 *et seq.*, there are two types of personnel agencies. A "Type A" personnel agency is

> a person who is engaged in the business or profession of serving, assisting, or in any way aiding a client seeking employment or making basic career decisions, who puts a client in direct contact with employers, and who receives a fee from the client for the services rendered or offered to be rendered. [MCL 339.1001(k).]

A "Type B" personnel agency is

> a person who is engaged in the business or profession of serving, assisting, or in any way aiding or consulting with a client to make basic career decisions and who receives a fee from the client for the services rendered or offered to be rendered. [MCL 339.1001(*l*).]

The two categories of personnel agencies were created in 1992, as part of a revision of article 10 of the Occupational Code by 1992 PA 253. Before the revision, there were five classes of employment agencies, with varying degrees of regulation. The 1992 revision replaced the five classes with the two categories of "personnel" agencies: (1) Type A agencies, which are employment agencies that place clients in direct contact with employers, and (2) Type B agencies, which are more in the nature of consulting agencies and assist clients in making basic career decisions.

In this case, the management agreement states that plaintiff was to provide Moore with "advice, counsel and guidance in the development of [his] career as an artist in the entertainment and entertainment-related industries" and to advise and counsel Moore on various aspects of his career. Thus, the agreement was one whereby plaintiff agreed to assist Moore in making basic career decisions, and plaintiff was to receive a fee for those services. Accordingly, plaintiff qualifies as a Type B personnel agency, as defined in MCL 339.1001(*l*), and was required to be licensed under MCL 339.1003(1).

We disagree with plaintiff's claim that he is exempt from licensure under MCL 339.1003(2)(d), which provides an exemption for the

> business of procuring, offering, promising, promoting, or attempting to provide an engagement for an athletic event, a circus, concert, vaudeville, theatrical, or other entertainment, or of giving information as to where an engagement

> may be procured or provided for an actor, artist, athlete, entertainer, or performer in an athletic event, a circus, vaudeville, theatrical, or other entertainment.

That exemption is not applicable here because plaintiff's contract was not a contract to procure, offer, promise, or promote any engagements for Moore, nor was plaintiff in the business of giving information about where engagements could be procured or provided for Moore. Indeed, the contract provides:

> Artist [Moore] acknowledges that Manager [plaintiff] is not an employment agency or theatrical agent, that Manager has not offered or attempted or promised to obtain, seek or procure employment or engagements for Artist, and that manager is not obligated, authorized, licensed or expected to do so.

## II. CHOICE OF LAW

In a further attempt to avoid application of article 10, plaintiff relies on ¶ 14 of the contract to argue that it is not governed by Michigan law. Paragraph 14 provides:

> Jurisdiction. Notwithstanding any subsequent agreements entered into by Artist, Artist agrees that the validity, construction and effect of this agreement shall be governed by the laws of the State of Georgia.

When determining the applicable law, the expectations of the parties must be balanced with the interests of the states. *Martino v Cottman Transmission Systems, Inc*, 218 Mich App 54, 60; 554 NW2d 17 (1996). The parties' choice of law should be applied if the issue is one the parties could have resolved by an express contractual provision. However, there are exceptions. The parties' choice of law will not be followed if (1) the chosen state has no substantial relationship to the parties or the transaction or (2) there is no reasonable basis for

choosing that state's law. Also, the chosen state's law will not be applied when it would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and whose law would be applicable in the absence of an effective choice of law by the parties. *Id.* at 60-61.

Both parties are Michigan residents, and the contract was executed in Michigan. Plaintiff did not offer any evidence showing that Georgia has a substantial relationship to either the parties or the transaction. Moreover, plaintiff filed this case in Michigan, and this case proceeded in Michigan for more than three years before the choice of law issue was ever raised. In response to defendants' prior motion for partial summary disposition (based in part on the statute of limitations), plaintiff cited Michigan law and at no time claimed that Georgia law governed the parties' agreement. It was not until more than 3½ years into litigation, when another motion for summary disposition was filed, that the choice of Georgia law in the parties' contract was mentioned. Accordingly, the trial court did not err by refusing to apply Georgia law.

For these reasons, the trial court properly dismissed plaintiff's breach of contract claim against Moore because plaintiff was not licensed as a personnel agency. Nor could plaintiff proceed against Moore under an equitable theory, such as unjust enrichment, because doing so would defeat the statutory bar to an action provided by MCL 339.1019(b). See *Stokes v Millen Roofing Co*, 466 Mich 660, 671-673; 649 NW2d 371 (2002).

### III. UNJUST ENRICHMENT

The trial court also properly dismissed plaintiff's unjust enrichment claim against the other members of defendant D-12, Inc. Unjust enrichment requires a

plaintiff to prove (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). If this is established, the law will imply a contract in order to prevent unjust enrichment. *Id*. However, a contract will be implied only if there is no express contract covering the same subject matter. *Id*.

There was an express contract in place between plaintiff and D-12 that governed plaintiff's entitlement to compensation for his work as a manager. Accordingly, a contract may not be implied under a theory of unjust enrichment.

Affirmed.