TALMER BANK & TRUST v PARIKH

Docket Nos. 312632 and 313122. Submitted February 5, 2014, at Detroit.
    Decided February 25, 2014, at 9:00 a.m. Leave to appeal sought.
    Vrajmohan C. Parikh and Sivaji Gundlappalli (hereafter defendants)
        executed two promissory notes in Michigan related to the purchase of
        two condominium units in Nevada. The lender on the notes was
        Citizens First Savings Bank, who had a Michigan address. The notes
        provided for the monthly payments to be mailed or delivered to
        Citizens in Michigan. One of the notes included a choice-of-law
        provision specifying the application of Michigan law to any disputes
        regarding the note. Both notes provided for the payment of reason-
        able attorney fees associated with any collection efforts should there
        be a default. The notes were secured by deeds of trust executed by
        defendants in favor of Citizens. The deeds of trust granted and
        conveyed to the trustee, Nevada Title Company, to be held in trust
        with the power of sale, the condominium units being purchased. They
        provided that they would be governed by federal law and the law of
        the jurisdiction where the property was located. Citizens became CF
        Bancorp, which then failed, resulting in the Federal Deposit Insur-
        ance Corporation (FDIC) taking CF Bancorp into receivership. The
        FDIC and First Michigan Bank (FMB), which later became Talmer
        Bank & Trust (hereafter plaintiff), entered into a purchase and
        assumption agreement, pursuant to which FMB was to assume CF
        Bankcorp's liabilities and purchase its assets, including the two
        promissory notes and deeds of trust concerning the condominiums.
        Defendants allege that FMB paid 20 cents on the dollar relative to the
        assets being purchased. Defendants stopped making their payments.
        The FDIC thereafter formally granted, assigned, and transferred CF
        Bancorp's assets to FMB. Notices of default and elections to sell
        under the deeds of trust were served on defendants. Both condos
        were thereafter sold at public auction in a trustee's sale. One condo
        was sold to a third party, leaving an outstanding loan balance of
        $233,261. The other was sold to plaintiff, leaving an outstanding loan
        balance of $454,932. Talmer then brought separate actions in the
        Oakland Circuit Court against defendants, alleging breach of each
        note and seeking to collect the deficiencies. Plaintiff and defendants
        moved for summary disposition in both actions. In the action involv-
        ing the note containing the choice-of-law provision (LC No. 2011-

123327-CK), the trial court, Martha D. Anderson, J., denied plaintiff's motion for summary disposition. The court then granted plaintiff's motion for reconsideration. The court eventually granted summary disposition in favor of plaintiff and ordered a deficiency judgment against defendants. The court denied plaintiff's motion for an award of attorney fees. Defendants appealed and plaintiff cross-appealed. (Docket No. 312632). In the action involving the note that did not contain a choice-of-law provision (LC No. 2011-123328-CK), the trial court, Wendy L. Potts, J., granted summary disposition in favor of plaintiff and awarded plaintiff a deficiency judgment. The court granted plaintiff's motion for an award of attorney fees. Defendants appealed. (Docket No. 313122). The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held*:

1. The law regarding deficiency actions in Michigan and Nevada is comparable for purposes of the factual circumstances of this case, except for Nevada Revised Statutes (NRS) 40.459(1)(c), which, if applicable, could potentially make an enormous difference in the amount recoverable by plaintiff. No ruling was made regarding whether NRS 40.459(1)(c) actually applies to and benefits defendants because that question is beyond the scope of this appeal.

2. The deeds of trust and the trustee sales were governed by Nevada law.

3. The factors listed in 1 Restatement Conflict of Laws, 2d, § 188(2)(a) to (e) favor applying Michigan law. 1 Restatement Conflict of Laws, 2d, § 195 favors the application of Michigan law.

4. Michigan had a substantial relationship to the parties and the transaction to the extent that there was a reasonable basis for the parties to have chosen the application of Michigan law to the note containing the choice-of-law provision. A balancing of the relevant factors supports the conclusion that the choice-of-law provision is valid and enforceable.

5. Michigan and Nevada law with respect to deficiency actions are sufficiently similar to the extent that Nevada policies and interests are not circumvented or defeated by the application of Michigan law under the facts presented in this case.

6. NRS 40.459(1)(c) does not support applying Nevada law and ignoring Michigan's policies and interests and the direct connection Michigan has to the notes, to the parties to the notes, and to the performances under the notes.

7. Plaintiff's exercise of the power-of-sale provisions in the deeds of trust did not constitute an "action" under Nevada law

that necessitated the joinder of the deficiency suits with the trustee sales, even if Nevada law applied.

8. Plaintiff is contractually entitled to reasonable attorney fees incurred in litigating this action, including reasonable attorney fees associated with this appeal.

9. The trial courts' rulings granting summary disposition in favor of plaintiff and entering deficiency judgments are affirmed in Docket Nos. 312632 and 313122. The award of attorney fees to plaintiff in Docket No. 313122 is affirmed. The denial of the motion for attorney fees in Docket No. 312632 is reversed and the case is remanded to the trial court for determination of plaintiff's reasonable attorney fees and an order to that effect.

Affirmed (Docket No. 313122).

Affirmed in part and reversed and remanded in part (Docket No. 312632).

1. Mortgages — Foreclosures — Conflict of Laws.

The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs; issues that do not affect any interest in the land, although they do relate to the foreclosure, are determined by the law which governs the debt for which the mortgage was given.

2. Contracts — Conflict of Laws.

The rights and duties of the parties with respect to an issue in a contract not governed by a choice-of-law provision are determined by the local law of the state that, with respect to that issue, has the most significant relationship to the transaction and the parties under principles that consider the various needs of interstate systems, pertinent policies of the forum state, the relevant policies of other interested states in determining particular issues, the protection of justified expectations, policies underlying particular fields of law, the certainty, uniformity, and predictability of results, and the ease in determining the law subject to selection; contacts to be taken into account in applying these principles include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties.

3. Contracts — Conflict of Laws.

The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an

effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied.

4. ACTIONS — CONFLICT OF LAWS.

Michigan courts, in determining what state law applies in any given case, will apply Michigan law unless a rational reason to do otherwise exists following a two-step analysis that encompasses, first, a determination if any foreign state has an interest in having its law applied (if no state has such an interest, the presumption that Michigan law will apply cannot be overcome) and, second, if a foreign state does have an interest in having its law applied, a determination whether Michigan's interests mandate that Michigan law be applied despite the foreign interests.

5. CONTRACTS — CONFLICT OF LAWS.

The law of the state chosen by the parties to a contract to govern their contractual rights and duties applies to an issue that the parties could have resolved by an explicit provision in the contract directed to that issue; the law of the state chosen by the parties applies, even if the particular issue is an issue that the parties could not have resolved by an explicit provision directed to that issue, unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice or unless application of the law of the chosen state would be contrary to a fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and the other state would be the state of the applicable law in the absence of the contract's choice-of-law provision.

*Barris, Sott, Denn & Driker, PLLC* (by *Matthew J. Bredeweg, Morley Witus,* and *James S. Fontichiaro*), for plaintiff.

*Dailey Law Firm, PC* (by *Brian T. Dailey* and *Justin G. Grove*), for defendants.

Before: MURPHY, C.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

MURPHY, C.J. In Docket No. 312632, defendants, Vrajmohan C. Parikh and Sivaji Gundlappalli, appeal as of right the trial court's order that granted a motion for reconsideration filed by plaintiff, Talmer Bank & Trust (Talmer), which then resulted in summary disposition being granted in favor of Talmer after its earlier motion for summary disposition had been denied by the court. Talmer cross-appeals the trial court's order denying its request for attorney fees in the case. In Docket No. 313122, the same defendants appeal as of right the trial court's order, issued by a different judge in a separate action, granting Talmer's motion for summary disposition. The court awarded Talmer attorney fees in the action. These consolidated appeals arise out of defendants' purchase of two condominium units in Las Vegas, Nevada, foreclosure sales of the condos following defaults pursuant to power-of-sale provisions in deeds of trust that had secured two promissory notes executed by defendants relative to their purchase of the condos and Talmer's attempts to collect deficiency judgments in Michigan against defendants on the notes in the instant actions. Separate suits were filed regarding each note. Defendants are presently residents of Michigan and were so when they executed the promissory notes, and the bank that initially provided the loans was a Michigan bank, as is Talmer. The notes were executed in Michigan, and defendants, until the defaults, performed under the notes by way of making payments in Michigan. The crux of the dispute is whether Nevada law or Michigan law governs the deficiency actions, with the trial courts ultimately concluding that, as urged by Talmer, Michigan law controls. Deficiency judgments were entered against defendants in the amounts of $244,476 in LC No. 2011-123327-CK (Docket No. 312632) and $454,932 in LC No. 2011-123328-CK (Docket No. 313122). We affirm in all re-

spects, except that we reverse the trial court's order in Docket No. 312632 that denied Talmer's request for attorney fees and remand for entry of an award of reasonable attorney fees.

I. BACKGROUND

On November 14, 2006, defendants, who are both Michigan doctors, executed a 30-year promissory note as borrowers in the amount of $336,000. The lender on the note was Citizens First Savings Bank (Citizens), which had an address in Port Huron, Michigan. Defendants obtained the loan in order to purchase a condominium unit in Las Vegas, Clark County, Nevada, as part of an investment strategy. The promissory note provided that the monthly payments of $2,235 were to be mailed or delivered to Citizens' Port Huron address. The note also indicated that, upon default, Citizens could declare the entire unpaid principal balance on the note and all accrued unpaid interest immediately due and payable. The note further provided for the payment of reasonable attorney fees associated with any collection efforts should there be a default. In a paragraph addressing the governing law, the promissory note provided:

> This NOTE will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Michigan without regard to its conflicts of law provisions. This NOTE has been accepted by Lender in the State of Michigan.

The promissory note was secured by a deed of trust executed by defendants on November 14, 2006, in favor of Citizens. The deed of trust granted and conveyed to the trustee, Nevada Title Company (NTC), to be held "in trust, with power of sale," the Las Vegas condominium unit being purchased. The deed of trust pro-

vided that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." The deed of trust was recorded on November 22, 2006, with the Register of Deeds for Clark County, Nevada.

On August 31, 2007, defendants executed a second 30-year promissory note as borrowers in the amount of $760,000 relative to the purchase of another Las Vegas condominium. The lender on the note was again Citizens. The promissory note provided that the monthly payments of $5,056 were to be mailed or delivered to Citizens' Port Huron address. This note did not include a choice-of-law or governing-law provision as was included in the first note. The note provided for the payment of reasonable attorney fees associated with any collection efforts should there be a default.

The promissory note was secured by a deed of trust executed by defendants on August 31, 2007, in favor of Citizens. As with the first deed of trust, it granted and conveyed to trustee NTC, to be held "in trust, with power of sale," the Las Vegas condominium unit being purchased in the second transaction. Also as with the first deed of trust, it provided that the deed of trust "shall be governed by federal law and the law of the jurisdiction in which the Property is located." The deed of trust was recorded on September 7, 2007, with the Register of Deeds for Clark County, Nevada.

Subsequently, Citizens became CF Bancorp, and CF Bancorp later failed, resulting in the Federal Deposit Insurance Corporation (FDIC) taking CF Bancorp into receivership. In April 2010, the FDIC and First Michigan Bank (FMB), which was later to become Talmer, entered into a purchase and assumption agreement, pursuant to which FMB was to assume CF Bancorp's liabilities and purchase its assets. These assets included the two promissory notes and deeds of trust regarding

the loans used to purchase the Las Vegas condominiums. The purchase and assumption agreement between the FDIC and FMB reflected the FDIC's acceptance of FMB's "[a]sset premium (discount) bid of (19.8)% (negative)," which meant, according to defendants, that FMB paid approximately 20 cents on the dollar relative to the assets being purchased from the FDIC. In May 2010, defendants stopped making the monthly payments on the promissory notes given the severe downturn in the economy and drastically reduced real property values. In October 2010, and pursuant to the earlier purchase and assumption agreement, the FDIC formally granted, assigned, and transferred CF Bancorp's assets to FMB. Accordingly, Talmer, formerly known as FMB, came to hold the notes and deeds of trust executed by defendants. Talmer is a Michigan bank.

In light of defendants' failure to pay on the notes, in November 2010, notices of default and election to sell under the deeds of trust were served on defendants and recorded. With respect to the condo covered by the first note and deed of trust, it was sold at public auction in a trustee's sale on September 15, 2011, to a third party, GMM Investments, LLC, for $133,450, leaving an outstanding loan balance of $233,261 as of the sale's date. With respect to the condo covered by the second note and deed of trust, it was sold at public auction in a trustee's sale on September 15, 2011, to Talmer for $382,590, leaving an outstanding loan balance of $454,932 as of the sale's date.

On November 30, 2011, in LC No. 2011-123327-CK (Docket No. 312632), Talmer filed a breach-of-note action in the trial court against defendants in regard to the first note, seeking a deficiency judgment for the outstanding balance on the note, $233,261, plus inter-

est, costs, and attorney fees that had accrued since the trustee's sale. On November 30, 2011, in LC No. 2011-123328-CK (Docket No. 313122), Talmer also filed a breach-of-note action in the trial court (different judge) against defendants in regard to the second note, seeking a deficiency judgment for the outstanding balance on the note, $454,932, plus interest, costs, and attorney fees that had accrued since the trustee's sale.

In both actions, Talmer filed motions for summary disposition under MCR 2.116(C)(9) and (10), arguing that defendants had failed to raise any dispute regarding the material facts, nor had they presented any colorable defense. In response, defendants argued that Talmer elected to foreclose pursuant to Nevada law and was required to abide by the mortgage foreclosure deficiency collection laws and procedures of Nevada, which allegedly presented hurdles not found under Michigan law. We shall explore later the particulars of Nevada law relied on by defendants. Defendants contended that Talmer had been required to pursue any deficiency claims in Nevada in association with the earlier trustee sales and failed to do so. Defendants additionally argued that summary disposition was premature, because discovery had not yet been completed. Defendants further maintained that one of the promissory notes did not specify that it was secured by collateral and thus the trustee sale was improper. Defendants also emphasized that FMB, now known as Talmer, purchased the notes and deeds of trust at a significant discount from the FDIC, which should be taken into consideration with regard to any claimed deficiency. Finally, defendants contended that Talmer lacked the authority to exercise the power-of-sale clauses because the FDIC assignment was never recorded.

In LC No. 2011-123327-CK (Docket No. 312632), a hearing was held in May 2012 on Talmer's motion for summary disposition. The trial court denied Talmer's motion, concluding that the note and deed of trust were interrelated, that the deed trumped the note given the sale at auction, that the choice of Nevada law set forth in the deed of trust therefore governed, that Nevada had a substantial relationship to and interest in the transaction considering that the condo was located in that state, that Michigan did not have a materially greater interest in the matter than Nevada, and that there were factual issues with respect to whether Talmer complied with the relevant provisions of Nevada law. Talmer filed a motion for reconsideration, which the trial court granted in August 2012. The court relied on 2 Restatement Conflict of Laws, 2d, § 229, and a comment thereto, along with cases from other jurisdictions, in ruling that, while foreclosure of a mortgage is governed by the law of the state in which the mortgaged property is located, the underlying promissory note is governed by the state law applicable to the note. The court ruled that the parties had agreed that the note would be governed by Michigan law and that Michigan had the more significant relationship to the note, considering that it was executed and delivered in Michigan by Michigan parties; the only connection of the note to Nevada was that the property securing the note was located in Nevada. The trial court, however, declined to award Talmer attorney fees, determining that defendants' choice-of-law arguments were not frivolous, that the case was otherwise a simple, routine collection action, and that any award of fees would not be reasonable. On September 11, 2012, the trial court entered an order granting summary disposition in favor of Talmer and awarding Talmer a deficiency judgment against defendants, jointly and severally, in the amount of

$244,476. Defendants appeal as of right the trial court's ruling awarding Talmer the deficiency judgment, while Talmer cross-appeals the court's denial of attorney fees.

In LC No. 2011-123328-CK (Docket No. 313122), after Talmer had filed its motion for summary disposition, defendants filed their own motion for summary disposition under MCR 2.116(C)(8) and (10), arguing that Nevada law applied and that Talmer had failed to act in accordance with Nevada law. In September 2012, a hearing was conducted on the competing motions for summary disposition. The trial court granted Talmer's motion for summary disposition and denied defendants' motion, employing an analysis that essentially mimicked the analysis set forth by the judge in deciding Talmer's motion for reconsideration in the first action. As opposed to the ruling in the first suit, the trial court awarded Talmer attorney fees. Pursuant to an order entered on October 10, 2012, the trial court formally granted summary disposition in favor of Talmer and awarded Talmer a deficiency judgment against defendants, jointly and severally, in the amount of $454,932, plus interest and $18,345 in attorney fees. Defendants appeal as of right.

II. ANALYSIS

A. STANDARD OF REVIEW AND SUMMARY DISPOSITION TESTS

A trial court's ruling on a motion for summary disposition is reviewed de novo on appeal. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). "We review a trial court's ruling on a motion for reconsideration for an abuse of discretion." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009). Issues concerning choice and conflicts of law are subject to review de novo. *Frederick v Federal-*

*Mogul Corp*, 273 Mich App 334, 336; 733 NW2d 57 (2006). A trial court's decision to grant or deny a request for attorney fees is reviewed for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). However, underlying factual findings made in support of a decision regarding attorney fees are reviewed for clear error. *Id.* We review de novo legal issues related to a trial court's ruling relative to attorney fees. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296-297; 769 NW2d 234 (2009).

Summary disposition was granted by the trial court on the basis of MCR 2.116(C)(9) and (10). "When deciding a motion under MCR 2.116(C)(9), which tests the sufficiency of a defendant's pleadings, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). Granting summary disposition under MCR 2.116(C)(9) is appropriate if the defendant's pleadings are so clearly untenable as a matter of law that no factual development could possibly deny the plaintiff's right to recover. *Id.* at 425-426.

In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court acknowledged the foundational principles applicable to the analysis of a motion under MCR 2.116(C)(10), stating:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed

in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

### B. DISCUSSION

### 1. INTRODUCTION

The provisions in the deeds of trust that indicated that Nevada law governed with regard to the deeds are not in dispute, and Nevada law was employed with respect to the exercise of the power-of-sale clauses. Talmer filed the lawsuits to collect on the two promissory notes, so our focus is on determining the law that governs the notes and related deficiency claims. In regard to the two promissory notes, one contained a choice-of-law provision, stating that Michigan law governed, while the other note was silent on the matter. Initially, we shall review and compare Michigan and Nevada law with respect to deficiency actions.

### 2. DEFICIENCY ACTIONS—MICHIGAN AND NEVADA LAW—REVIEW AND COMPARISON

In Michigan, MCL 600.3201 *et seq.*, addresses foreclosure by advertisement pursuant to power-of-sale clauses, and MCL 600.3280 is the only statute that directly pertains to deficiency actions. See *Citizens Bank v Boggs*, 299 Mich App 517, 521; 831 NW2d 876

(2013) (the power to render a deficiency ruling in foreclosure proceedings is entirely statutory and MCL 600.3280 provides defenses to a deficiency action). MCL 600.3280 provides:

When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligation thereby secured has become or becomes the purchaser, or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as matter of defense and set-off to the extent only of the amount of the plaintiff's claim, that the property sold was fairly worth the amount of the debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent. This section shall not affect nor apply to the rights of other purchasers or of innocent third parties, nor shall it be held to affect or defeat the negotiability of any note, bond or other obligation secured by such mortgage, deed of trust or other instrument. Such proceedings, as aforesaid, shall in no way affect the title of the purchaser to the lands acquired by such purchase. This section shall not apply to foreclosure sales made pursuant to an order or decree of court nor to any judgment sought or rendered in any foreclosure suit nor to any chancery sale heretofore or hereafter made and confirmed.

"The clear language of the statute provides a defense, or setoff, to a deficiency action where a purchaser

purchased property for less than the value of the property[, but it] does not apply where . . . the purchase bid far exceeds the 'value' of the property." *Pulleyblank v Cape*, 179 Mich App 690, 694; 446 NW2d 345 (1989). Under MCL 600.3280, if "the lender bids less than the amount of the loan and seeks a deficiency, the lender may be challenged by the debtor on the grounds that the bid was below the fair market value." 1 Cameron, Michigan Real Property Law (3d ed), Mortgages, § 18.86, p 753; see also *Reconstruction Fin Corp v Mercury Realty Co, Inc*, 97 F Supp 491, 494 (ED Mich, 1951) ("[T]he Michigan statute provides that in determining the amount of deficiency the fair market value of the property at the time of sale . . . shall be considered[.]"). The "true value" of the foreclosed property is thus relevant and can aid a defending debtor in a deficiency action when the true value is more than the purchase price. MCL 600.3280 otherwise provides a setoff or credit against a deficiency claim for the amount of a winning bid at a foreclosure sale. In *Citizens Bank*, 299 Mich App at 520-521, this Court explained what is known as the "full credit bid" rule:

> "When a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered would be returned to it. If this credit bid is equal to the unpaid principal and interest on the mortgage plus the costs of foreclosure, this is known as a 'full credit bid.' When a mortgagee makes a full credit bid, the mortgage debt is satisfied, and the mortgage is extinguished." [Quoting *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 68; 761 NW2d 832 (2008) (citations omitted), which referred to MCL 600.3280.]

We next examine Nevada law. Nevada Revised Statutes (NRS) 40.451 *et seq.*, address the joint topic of

foreclosure sales and deficiency judgments. Defendants emphasize the language in NRS 40.453, which provides:

> Except as otherwise provided in NRS 40.495 [inapplicable]:
>
> (1) It is hereby declared by the Legislature to be against public policy for any document relating to the sale of real property to contain any provision whereby a mortgagor or the grantor of a deed of trust or a guarantor or surety of the indebtedness secured thereby, waives any right secured to the person by the laws of this state.
>
> (2) A court shall not enforce any such provision.

"This section is part of the anti-deficiency statutes, and the obvious intent of the legislature was to preclude lenders from requiring borrowers to waive their rights under the anti-deficiency statutes." *Lowe Enterprises Residential Partners, LP v The Eighth Judicial Dist Court of Nevada*, 118 Nev 92, 103; 40 P3d 405 (2002). But the *Lowe Enterprises* court also noted that, with regard to NRS 40.453, the legislature could not have intended "to prohibit the waiver of any right secured by law, then such things as arbitration agreements, forum selection clauses and choice-of-law provisions would be unenforceable." *Id.* at 102-103. NRS 40.453 quite clearly would encompass a loan obtained for the purpose of purchasing real property; the promissory notes related to the sales of real property. Defendants maintain that NRS 40.453, which specifically alludes to Nevada public policy and governs real property sales in Nevada, is circumvented, with deficiency protections effectively being waived, if Michigan law is applied to Talmer's collection actions.[1]

NRS 40.455(1) provides:

---

[1] Defendants note the case of *Welburn v The Eighth Judicial Dist Court of Nevada*, 107 Nev 105, 107; 806 P2d 1045 (1991), wherein the Nevada Supreme Court stated, "Nevada has a strong interest in protecting the

[U]pon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively.

NRS 40.455(3) does not allow for a deficiency judgment, even if a deficiency exists, with respect to a single-family dwelling owned by the debtor or deed of trust grantor and purchased with the loan proceeds secured by a deed of trust, but only if the "debtor or grantor continuously occupied the real property as the debtor's or grantor's principal residence after securing the . . . deed of trust[.]" There is no dispute that defendants, who reside in Michigan, did not continuously occupy the condos as their principal residences after executing the deeds of trust. Accordingly, although Michigan does not have a provision similar to NRS 40.455(3), the statute would not afford defendants any protection under the circumstances. NRS 40.457 provides:

(1) Before awarding a deficiency judgment under NRS 40.455, the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of foreclosure sale or trustee's sale. . . . .

(2) Upon application of any party made at least 10 days before the date set for the hearing the court shall, or upon

efficacy of the deficiency statute[s] with respect to out of state owners of Nevada real property[.]" See also *Verreaux v D'Onofrio*, 108 Nev 142, 144; 824 P2d 1021 (1992).

its own motion the court may, appoint an appraiser to appraise the property sold as of the date of foreclosure sale or trustee's sale.

"NRS 40.457 requires a hearing and the taking of evidence concerning the fair market value of the property sold and notice of the hearing to all defendants against whom a deficiency judgment is sought." *First Interstate Bank of Nevada v Shields*, 102 Nev 616, 619; 730 P2d 429 (1986) (emphasis omitted). Although MCL 600.3280 does not expressly refer to an evidentiary hearing being conducted, a deficiency lawsuit and a defense to a deficiency action under MCL 600.3280 would necessarily entail a hearing and possibly a trial, the presentation of evidence, and all the protections afforded by the Michigan Court Rules and constitutional due process principles. In *Guardian Depositors Corp v Darmstaetter*, 290 Mich 445; 288 NW 59 (1939), the Michigan Supreme Court addressed a deficiency action brought under the nearly identical predecessor to MCL 600.3280, 1937 PA 143, and found that the parties were entitled to a jury trial on an issue of fact concerning the value of the property, even though the statute then expressly permitted only a bench trial. With regard to an appraisal, nothing in MCL 600.3280 precludes an appraisal, and, indeed, an appraisal would be an almost necessary evidentiary tool to determine true value under MCL 600.3280. See *Guardian Depositors Corp v Hebb*, 290 Mich 427, 432-433; 287 NW 796 (1939) (reviewing and accepting an appraiser's testimony in a deficiency action brought under the predecessor to MCL 600.3280).

NRS 40.459 provides, in relevant part:

(1) After the hearing, the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt. The court shall not render judgment for more than:

(a) The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale;

(b) The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale; or

(c) If the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs,

whichever [of the three] is the lesser amount.

NRS 40.459(1)(a) and (b) appear to be fairly comparable to the provisions in MCL 600.3280, effectively providing a credit or setoff based on either the actual winning bid at a sale or the fair market value of the property at the time of sale. See *Shields*, 102 Nev at 619 (If "the fair market value of the property at the time of sale exceeded the amount due the creditor, no deficiency exists and no party . . . may be held liable to the creditor.").[2]

NRS 40.459(1)(c) perhaps supports defendants' argument that the price of the promissory notes paid to the FDIC needs to be contemplated in determining the amount of the deficiencies. If NRS 40.459(1)(c) applies, and if the purchase of the notes from the FDIC was for 20 cents on the dollar as claimed by defendants, any

---

[2] NRS 40.459 does appear to allow an assessment of fair market value even when a third party submits a winning bid at a trustee sale and pays the lender said amount, whereas MCL 600.3280 only addresses situations in which the "mortgagee, payee or other holder of the obligation" makes the purchase at the auction.

deficiencies would appear to be wiped clean. Michigan does not have a comparable provision. NRS 40.459(1)(c) is a recent addition to Nevada law, it only became effective June 10, 2011. See 2011 Nev Stat, ch 311, § 5. In the fall of 2013, the Nevada Supreme Court issued an advisory opinion regarding NRS 40.459(1)(c). *Sandpointe Apartments, LLC v The Eighth Judicial Dist Court of Nevada*, 313 P3d 849; 129 Nev Adv Rep 87 (2013). The court held "that the limitations in NRS 40.459(1)(c) apply to sales, pursuant to either judicial foreclosures or trustee's sales, occurring on or after the effective date [June 10, 2011] of the statute[,]" regardless of when underlying rights in promissory notes were transferred or assigned. *Id.* at 851. The trustee sales here took place after June 10, 2011, in September 2011. The court in *Sandpointe Apartments* noted that NRS 40.459(1)(c) was designed to prevent profiteering and to encourage negotiations between creditors and borrowers. *Id.* at 853.[3] In order to accomplish those goals, the statute greatly limited "the amount of a deficiency judgment that a successor in interest can recover, thereby discouraging these entities from purchasing notes or mortgages 'for pennies on the dollar.'" *Id.* (citation omitted).

In summation, and as can be gleaned from our earlier discussion, we find that the law regarding deficiency

---

[3] The court reflected on the Nevada Legislature's motivation:

The recent recession severely affected Nevada's real estate market. As a result, a large secondary market emerged wherein various entities, including collection companies, would purchase distressed loans at deep discounts. These entities would then exercise their power of sale or judicially foreclose on the collateral securing the loans and seek deficiency judgments against the debtors and guarantors based upon the full indebtedness. [*Sandpointe Apartments*, 313 P3d at 852, citing Hearing on Assembly Bill 273 Before the Assembly Commerce and Labor Committee, 76th Leg (Nev, March 23, 2011).]

actions in Michigan and Nevada is quite comparable for purposes of our factual circumstances, *with the exception of NRS 40.459(1)(c)*, which could potentially make an enormous difference in the amount recoverable by Talmer if applicable. Because it is beyond the scope of this appeal, we make no ruling with respect to whether NRS 40.459(1)(c) actually applies to and benefits defendants, but we shall proceed on the assumption that it does as part of our analysis.

### 3. LEGAL PRINCIPLES REGARDING CHOICE AND CONFLICT OF LAWS

The Restatement Conflict of Laws, 2d, has generally been followed and applied by Michigan courts. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 489 n 17, 502 n 51; 835 NW2d 363 (2013); *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113, 124-128; 528 NW2d 698 (1995) (specifically adopting §§ 187 and 188 of the Restatement, which are relevant here); *Farm Bureau Ins Co v Abalos*, 277 Mich App 41, 45; 742 NW2d 624 (2007). "The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs." 2 Restatement Conflict of Laws, 2d, § 229, p 29. Consistent with this provision, and as indicated earlier, the deeds of trust and trustee sales were governed by Nevada law. Comment *e* to § 229 of the Restatement, which addresses issues collateral to foreclosure, provides:

> The courts of the situs would apply their own local law to determine questions involving the foreclosure which affect interests in the land. Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined, on the other hand, by the law which governs the debt for which the mortgage was given. Examples of such latter issues are the mortgagee's right to hold the mortgagor liable for any deficiency remaining

after foreclosure or to bring suit upon the underlying debt without having first proceeded against the mortgaged land. The rules for ascertaining the state whose local law governs the underlying debt are stated in §§ 187-188. [Section 187 addresses contracts with choice-of-law provisions, and § 188 addresses contracts that are silent on the issue.]

With respect to 1 Restatement Conflict of Laws, 2d, § 188, p 575, it addresses situations in which, as is the case for one of the promissory notes here, the parties have entered into a contract that is silent in regard to the choice of state law that will govern the parties' rights under the contract. Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.[4]

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

---

[4] 1 Restatement Conflict of Laws, 2d, § 6, p 10, indicates that a court, subject to constitutional restrictions, must follow statutory directives of its own state regarding choice of law, but if there are no such directives, the following factors are relevant to determining choice of law: the various needs of interstate systems; pertinent policies of the forum state; the relevant policies of other interested states in determining particular issues; the protection of justified expectations; policies underlying particular fields of law; certainty, uniformity, and predictability of results; and the ease in determining and applying the law subject to selection. Michigan has no *statutory* directives concerning choice of law. Michigan does have a forum-selection statute, MCL 600.745.

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Defendants direct our attention to 1 Restatement Conflict of Laws, 2d, § 189, p 586, as generally alluded to above in subsection (3) of § 188; however, § 189 addresses contracts for the transfer of interests in land, which would pertain to purchase or buy-sell agreements for property, not promissory notes. 1 Restatement Conflict of Laws, 2d, § 195, p 619, which is also encompassed by the reference in subsection (3) of § 188, provides:

The validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

In *Sutherland v Kennington Truck Serv, Ltd*, 454 Mich 274, 286; 562 NW2d 466 (1997), our Supreme Court discussed, in general, the issue of what state law applies in any given case:

[W]e will apply Michigan law unless a "rational reason" to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law

will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests. [Citations omitted.]

With respect to 1 Restatement Conflict of Laws, 2d, § 187, p 561, it addresses situations in which the parties have entered into a contract containing a choice-of-law provision, as is the case regarding one of the promissory notes here. Section 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

As indicated in subsection (2)(b) of § 187, the factors in § 188, previously quoted, can also become relevant when analyzing § 187. Mostly consistent with § 187, in *Hudson v Mathers*, 283 Mich App 91, 96-97; 770 NW2d 883 (2009), this Court observed:

When determining the applicable law, the expectations of the parties must be balanced with the interests of the states. The parties' choice of law should be applied if the issue is one the parties could have resolved by an express contractual provision. However, there are exceptions. The parties' choice of law will not be followed if (1) the chosen state has no substantial relationship to the parties or the transaction or (2) there is no reasonable basis for choosing that state's law. Also, the chosen state's law will not be applied when it would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and whose law would be applicable in the absence of an effective choice of law by the parties. [Citations omitted.]

### 4. APPLICATION OF LEGAL PRINCIPLES TO THE FACTS

Upon analysis of 1 Restatement Conflict of Laws, 2d, § 188(2)(a) to (e), the factors favor applying Michigan law, because the place of negotiating the promissory notes was Michigan, the place of contracting was Michigan, the place of performance with regard to making the payments on the notes was Michigan, the place of defendants' residence was Michigan, and the place of Citizens' business, as well as the place of Talmer's business, was Michigan. Even in regard to the "location of the subject matter of the contract," § 188(2)(d), the subject matter of the promissory notes was technically the funds being loaned, with the subject matter of the deeds of trust and purchase agreements being the condos. That said, the funds received by defendants were used to purchase condos in Nevada, and the notes were secured by the Nevada condos. Nevertheless, the factors in § 188(2)(a) to (e) still weigh heavily in favor of Michigan law.

Under 1 Restatement Conflict of Laws, 2d, § 195, which pertains to "Contracts for the Repayment of

Money Lent," the analysis calls for applying the law of the state where the contract required repayment to be made, which here was indisputably Michigan, unless another state had a more significant relationship to the transaction and the parties. Again, the transactions on the notes occurred in Michigan and solely involved Michigan parties.

Under *Sutherland*, 454 Mich at 286, with respect to which state law should apply generally, we start with the presumption that Michigan law applies, and the issue then becomes whether Nevada has an interest in having its laws apply, and if so, whether Michigan interests nevertheless mandate application of Michigan law. We additionally note that 1 Restatement Conflict of Laws, 2d, § 6, p 10, as incorporated by §§ 188 and 195 (see footnote 4 of this opinion), also refers to, among other matters, the interests and policies of the competing states. We shall return to the issue of state policies and interests momentarily.

Relative to the promissory note that provides for application of Michigan law, under 1 Restatement Conflict of Laws, 2d, § 187, and *Hudson*, 283 Mich App at 96-97, our starting point is that Michigan law applies given the parties' contract, but the choice can be overcome if Michigan lacked a substantial relationship to the parties or the transaction and there was no reasonable basis for the parties to have chosen Michigan. Consistent with our analysis under §§ 188 and 195, Michigan had a substantial relationship to the parties and transaction and there was thus a reasonable basis for the parties to have chosen application of Michigan law, considering that the parties were from Michigan, the note was negotiated and executed in Michigan, and performance of the note occurred in Michigan. The parties' choice of law can also be overcome under § 187

and *Hudson*, 283 Mich App at 96-97, if applying Michigan law would be contrary to the fundamental policies of Nevada, if Nevada has a materially greater interest than Michigan in the issue presented, *and* if Nevada law would govern under a balancing of the factors in 1 Restatement Conflict of Laws, 2d, § 188. We have already determined that the balancing of the factors in § 188 weighs in favor of applying Michigan law; therefore, application of § 187 and *Hudson* supports the conclusion that the choice-of-law provision in the one promissory note is valid and enforceable.

With respect to the interests and policies of Michigan and Nevada in regard to deficiency actions, defendants adamantly argue that the protections afforded mortgagors under Nevada law are substantial, cannot be waived, are effectively waived by applying Michigan law, and must be honored in order to fulfill the public policy goals of Nevada and safeguard its interests. In support, defendants cite myriad statutes and Nevada cases referenced by us earlier in this opinion. In our view, one of the problems with defendants' argument is that it essentially presupposes the applicability of Nevada law rather than provides support for choosing Nevada law over Michigan law. Defendants, for the most part, ignore or inaccurately trivialize Michigan policy and law, reviewed earlier in this opinion, regarding deficiency actions and protections given to both debtors and creditors. Setting aside for the moment consideration of NRS 40.459(1)(c), which might perhaps defeat Talmer's deficiency claims if applied, Michigan and Nevada law with respect to deficiency actions, under the facts presented here, are sufficiently similar to the extent that Nevada policies and interests are not circumvented or defeated by the application of Michigan law. Moreover, defendants have not directly argued

that the fair market values of the condos at the time of the sales were greater than the amounts of the successful bids.

In regard to NRS 40.459(1)(c), it certainly creates a new source of protection against deficiency actions for certain debtors, while at the same time clearly frustrating entities that purchase notes and security instruments at discounted rates. In O'Steen & Johansson, *AB 273 Creates New Challenges for Secured Lenders*, 19 Nevada Lawyer 22, 23-24 (2011), the authors, after noting that "borrowers will undoubtedly assert that the effect of [NRS 40.459(1)(c)] is to limit a deficiency award whenever the underlying debt has been acquired," opined:

> This statute has a tremendous potential to undermine the value of commercial transactions involving Nevada real estate loans. Loans are often acquired for a number of reasons, including pooling transactions, bank failures and note sales. Indeed, it is a fundamental aspect of a promissory note that it is a "negotiable instrument" and thus freely transferrable.

Michigan, at this time, has not opted to impose such constraints on deficiency claims, which absence of legislation must also be given some consideration. Indeed, MCL 600.3280 provides, in part, that the statute shall not "be held to *affect or defeat the negotiability* of any note, bond or other obligation secured by [a] mortgage, deed of trust or other instrument." (Emphasis added.) As suggested by the authors of the Nevada Lawyer article, NRS 40.459(1)(c) can be viewed as affecting the negotiability of promissory notes, which, perhaps arguably, would be contrary to Michigan policy as reflected in MCL 600.3280. Contemplation of Nevada's and Michigan's policies and interests does not mean favoring and supporting only those laws that benefit borrow-

ers to the detriment of lenders or giving weight to laws, or the absence thereof, that benefit lenders to the detriment of borrowers. Ultimately, NRS 40.459(1)(c) does not support applying Nevada law and ignoring Michigan's policies and interests and the direct Michigan connections to the promissory notes, to the parties to those notes, and to the performances under the notes. We also question Nevada's interests in seeing Michigan residents avoid deficiency judgments at the hands of a Michigan bank merely because the properties securing the loans, which originated and were paid in Michigan, were located in Nevada. Moreover, while we appreciate that the Nevada Supreme Court has ruled in *Sandpointe Apartments*, 313 P3d at 851, that NRS 40.459(1)(c) applies to trustee sales that took place on or after June 10, 2011, regardless of when underlying transfers or assignments occurred, the fact remains that the statutory provision did not exist when the notes were executed or when the notes and deeds of trust were purchased from the FDIC. *Sandpointe Apartments* dealt with the issue of retroactive versus prospective application, not conflicts of law. And 1 Restatement Conflict of Laws, 2d, § 6, directs courts to protect the justified expectations of the parties and to consider the certainty and predictability of results. There was no expectation of the applicability of NRS 40.459(1)(c) in 2006 and 2007 when the notes and deeds of trust were executed, nor would the application of a statutory provision that did not exist at the time of contracting lend support to the certainty and predictability of results.

Turning to another argument posed by defendants, they maintain, citing NRS 40.430, that Nevada law required the trustee sales to be joined with the deficiency suits in a single action. Defendants contend that once Talmer opted to have the condos sold

at auction, it was locked into pursuing any deficiencies in Nevada or under Nevada law. Again, these arguments presuppose the applicability of Nevada law and are inconsistent with the Restatement approach and Michigan cases analyzed earlier. Furthermore, NRS 40.430(1) provides:

> Except in cases where a person proceeds under subsection 2 of NRS 40.495 or subsection 1 of NRS 40.512, and except as otherwise provided in NRS 118C.220 [all exceptions inapplicable], there may be but *one action* for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS 40.430 to 40.459, inclusive. In that action, the judgment must be rendered for the amount found due the plaintiff, and the court, by its decree or judgment, may direct a sale of the encumbered property, or such part thereof as is necessary, and apply the proceeds of the sale as provided in NRS 40.462. [Emphasis added.]

The flaw in defendants' argument is that NRS 40.430(6)(e) specifically provides that an "action" does not include an act or proceeding "[f]or the exercise of a power of sale . . . ." Accordingly, Talmer's exercise of the power-of-sale provisions in the two deeds of trust did not constitute an action that necessitated the joinder of deficiency suits, even if Nevada law applied.

Finally, we note that our ruling finds support in other jurisdictions. See *Fed Deposit Ins Corp v Henry*, 818 F Supp 452, 454-455 (D Mass, 1993) (Massachusetts law governed deficiency action on a note executed in Massachusetts even though the property securing the loan was located in New Hampshire); *Cardon v Cotton Lane Holdings, Inc*, 173 Ariz 203; 841 P2d 198 (1992); *Consol Capital Income Trust v Khaloghli*, 183 Cal App 3d 107, 112; 227 Cal Rptr 879 (1986) ("[T]he rule is clear and

solidly grounded: The law of the situs of the debt controls when the suit is brought against the debt . . . and not the land.").

### 5. ATTORNEY FEES

In Docket No. 312632, Talmer cross-appeals the trial court's denial of its request for attorney fees. Attorney fees are not recoverable as an element of damages or costs unless expressly allowed by court rule, statute, common-law exception, or contract. *Reed*, 265 Mich App at 164. Parties can contract for the payment of attorney fees, and contractual provisions for the payment of reasonable attorney fees are judicially enforceable. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). "In other words, a contractual clause providing that in the event of a dispute the prevailing party is entitled to recover attorney fees is valid." *Id*. Attorney fees that are awarded pursuant to contractual provisions are considered damages, not costs. *Id*. "A contractual provision for reasonable attorney fees in enforcing provisions of [a] contract may validly include allowance for services rendered upon appeal." *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 549; 362 NW2d 823 (1984).

Here, the promissory note required defendants to pay the lender's reasonable attorney fees incurred in collecting on the note upon default. Given our holding affirming entry of the summary disposition judgment, Talmer is contractually entitled to reasonable attorney fees incurred in litigating the case, including reasonable attorney fees associated with this appeal. The trial court's reasoning that defendants' arguments regarding choice and conflicts of law were not frivolous and that the case was otherwise a simple, routine collection action has no relevancy to defendants' contractual

obligation to pay Talmer's attorney fees, although it might have a bearing on the amount of fees awarded in the context of evaluating reasonableness. See *Dep't of Transp v Randolph*, 461 Mich 757, 766; 610 NW2d 893 (2000), employing Rule 1.5(a) of the Michigan Rules of Professional Conduct; *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982). The trial court's ruling that any award of attorney fees would be unreasonable circumvents defendants' clear contractual obligation to pay fees and Talmer's clear contractual right to be reimbursed for its attorney fees, as long as they are reasonable. On remand, the trial court is to award Talmer reasonable attorney fees consistent with applicable legal authorities. To the extent that defendants may be challenging the award of attorney fees in Docket No. 313122, we affirm for the same reasons set forth above.

### III. CONCLUSION

We affirm the trial courts' rulings granting summary disposition in favor of Talmer and entering deficiency judgments against defendants in Docket Nos. 312632 and 313122. We also affirm the trial court's ruling awarding attorney fees to Talmer in Docket No. 313122. Finally, we reverse the trial court's ruling in Docket No. 312632 that denied Talmer's request for attorney fees and remand for a determination of Talmer's reasonable attorney fees.

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction. Having fully prevailed on appeal, Talmer is awarded taxable costs pursuant to MCR 7.219.

M. J. KELLY and RONAYNE KRAUSE, JJ., concurred with MURPHY, C.J.