# STATE OF MICHIGAN

# COURT OF APPEALS

---

RON VANALSTINE, and JOAN VANALSTINE,

   Plaintiffs-Appellants,

v

LAND O'LAKES PURINA FEEDS, LLC,

   Defendant-Appellee,

and

DIVERSIFIED FARMS, LLC,

   Defendant.

FOR PUBLICATION
December 27, 2018
9:05 a.m.

No. 340150
Clinton Circuit Court
LC No. 16-011503-NZ

---

RON VANALSTINE, and JOAN VANALSTINE,
doing business as ROLJOS DAIRY,

   Plaintiffs-Appellants,

v

LAND O'LAKES PURINA FEEDS, LLC,

   Defendant-Appellee,

and

DIVERSIFIED FARMS, LLC,

   Defendant.

No. 342990
Clinton Circuit Court
LC No. 2016-011503-NZ

---

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

SWARTZLE, J.

An implied warranty, once disclaimed, cannot be revived by the inadequacy of an express warranty's remedy. This rule of law is fatal to plaintiffs' claims of breach of implied warranty under Michigan's version of the uniform commercial code, and thus we affirm summary disposition against plaintiffs. On the matter of taxable costs, we vacate in part the trial court's order taxing costs and remand for correction.

## I. BACKGROUND

Plaintiffs operate a dairy farm in Eaton County. Defendant is a Minnesota corporation that manufactures and distributes animal feed and related products. Diversified Farms, LLC (Diversified) is a distributor of those products in Michigan. In July 2008, Diversified executed a Credit Application and Agreement (the Credit Agreement) with defendant that included a disclaimer of warranties and a remedy-limiting provision. Plaintiffs were not parties to the Credit Agreement.

In early 2013, plaintiffs entered into an oral contract with Diversified in which Diversified agreed to supply defendant's products to plaintiffs. The two products at issue are a dairy-protein supplement and a dry-cow supplement, which are concentrates that are mixed with grain, haylage, and silage before being fed to dairy cattle. Plaintiffs also purchased from Diversified a salt-and-mineral supplement commonly referred to as "SE-90," which was not defendant's product. SE-90 was provided to the herd on a "free choice" basis, meaning that the cattle could eat as much or as little of it as they wanted.

Plaintiffs began to notice that the herd showed signs of sickness a few months after entering the oral contract with Diversified. It was ultimately determined that the herd suffered from iodine toxicity. After performing tests of the feed, plaintiffs concluded that defendant's products sickened the herd. Defendant disagreed, arguing that the iodine toxicity came from another source, likely the SE-90.

Plaintiffs sued, alleging that defendant's products caused iodine toxicity in plaintiffs' herd and, as a result, defendant breached the implied warranties of merchantability and fitness for a particular purpose under the Uniform Commercial Code (UCC). Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that it effectively disclaimed the implied warranties under the following paragraphs of the Credit Agreement:

> **17. DISCLAIMER OF WARRANTIES.** SUPPLIER EXCLUDES AND DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO ANY GOODS SOLD TO APPLICANT. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES, WHICH EXTEND BEYOND THE WARRANTIES EXPRESSLY STATED ON THE FACE OF ANY SUCH PRODUCT.

**18. EXCLUSIVE REMEDY.** Applicant's sole and exclusive remedy for claims made against Supplier (including, without limitation, claims for breach of contract, breach of warranty, negligence, or strict liability) are limited to the replacement of any products sold or services provided. Supplier is not responsible and Applicant expressly agrees to hold Supplier harmless for any special, indirect, consequential, exemplary, incidental, or additional damages.

The Credit Agreement also contained a choice-of-law provision designating Minnesota law as the applicable state law.

Applying Michigan's version of the UCC, the trial court found that the disclaimer of implied warranties in paragraph 17 was effective because it adhered to the statutory requirements. Plaintiffs maintained that the remedy-limitation in paragraph 18 failed of its essential purpose, thereby invalidating the disclaimer found in paragraph 17, and allowing them to recover under the standard warranty provisions of the UCC. The trial court disagreed, concluding that a failure of a remedy does not revive effectively disclaimed implied warranties. Accordingly, the trial court granted defendant's motion for summary disposition.

After the trial court granted summary disposition, defendant submitted a proposed taxation of costs, requesting $4,982.26. Plaintiffs filed an objection, arguing that the costs requested were not authorized by statute. Defendant filed an amended taxation of costs and sought a revised amount of $3,331.20. Concluding that the amended taxation was authorized and not extraordinary, the trial court taxed costs against plaintiffs.

Plaintiffs appealed both rulings of the trial court.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Tomra of North America, Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336871); slip op at 2. We review de novo issues of statutory and contractual interpretation. *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 632; 774 NW2d 332 (2009).

We review a trial court's ruling on a motion to tax costs for an abuse of discretion. *Ivezaj v Auto Club Ins Ass'n*, 275 Mich App 349, 367; 737 NW2d 807 (2007). "An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). "[W]hether a particular expense is taxable as a cost is a question of law" that this Court reviews de novo. *Id*. at 670.

### B. CHOICE OF LAW

In a footnote in their appellate brief, plaintiffs argue that this Court should apply Minnesota law to this dispute because of the choice-of-law provision in the Credit Agreement.

"When determining the applicable law, the expectations of the parties must be balanced with the interests of the states." *Hudson v Mathers*, 283 Mich App 91, 96; 770 NW2d 883 (2009). "The parties' choice of law should be applied if the issue is one the parties could have resolved by an express contractual provision." *Id*. This Court, however, will not defer to the parties' choice of law if "(1) the chosen state has no substantial relationship to the parties or the transaction," "(2) there is no reasonable basis for choosing that state's law," or (3) when applying the chosen state's law "would be contrary to the fundamental policy of a state that has a materially greater interest than the chosen state in the determination of the particular issue and whose law would be applicable in the absence of an effective choice of law by the parties." *Id*. at 96-97.

The Credit Agreement was executed by defendant, a Minnesota corporation, and Diversified, a Michigan limited-liability company. If defendant and Diversified were the only parties to this dispute, then it appears that there would be little question that Minnesota law would apply per the Credit Agreement's choice-of-law provision. Yet, Diversified was dismissed from the lawsuit, and plaintiffs were not parties to the Credit Agreement.

At no time before this appeal have plaintiffs argued that Minnesota law applies to this case. Rather, only after the trial court granted defendant's motion for summary disposition—applying Michigan law—did plaintiffs argue that this state's law was inapplicable. On appeal, plaintiffs have not provided any argument as to why the choice-of-law provision should apply to them despite not being a party to the Credit Agreement. Moreover, plaintiffs do not argue that the choice between Michigan or Minnesota law is outcome determinative, and, indeed, the two states have both adopted the same model provisions of the UCC at issue here. Compare MCL 440.2316 with Minn Stat 336.2-316. Thus, because Michigan law has been applied from the outset, and plaintiffs have not provided any support for their argument that Minnesota law should apply, we apply Michigan law to this dispute. *Hudson*, 283 Mich App at 97.

## C.  EXPRESS WARRANTY

Moving to the merits of plaintiffs' claims, plaintiffs first argue that the trial court erred by granting summary disposition because the record shows that defendant breached an express warranty. Plaintiffs did not, however, assert a claim of breach of an express warranty in their complaint, nor did they otherwise raise the issue before the trial court. On appeal, plaintiffs did not include the issue in their statement of questions presented. Therefore, we decline to address the issue in the first instance on appeal. *Orion Twp v State Tax Comm*, 195 Mich App 13, 18; 489 NW2d 120 (1992).

## D.  IMPLIED WARRANTIES

Plaintiffs' primary argument on appeal is that the limited remedy in paragraph 18 of the Credit Agreement failed of its essential purpose and, as a result, the disclaimers of implied warranties in paragraph 17 were ineffective. Michigan's version of Article 2 of the UCC, MCL 440.2101 *et seq*., governs the transactions of the sale of goods. "Every contract for the sale of goods under Article 2 of the [UCC] includes implied warranties of merchantability and fitness for a particular purpose." *Lumber Mut Ins Co v Clarklift of Detroit, Inc*, 224 Mich App 737, 739; 569 NW2d 681 (1997), citing MCL 440.2314 and MCL 440.2315. "The warranty of

merchantability requires that the goods sold be of average quality within the industry. A warranty of fitness for a particular purpose requires that the goods sold be fit for the purpose for which they are intended." *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 316; 696 NW2d 49 (2005) (cleaned up). A seller may, however, disclaim either implied warranty, provided that certain statutory requirements are met. MCL 440.2316. Whether a warranty was effectively disclaimed is a question of law for this Court. *Lumber Mut Ins*, 224 Mich App at 742.

To begin, the parties do not dispute that the disclaimers of implied warranties in paragraph 17 are binding on plaintiffs, even though plaintiffs were not parties to the Credit Agreement. An indirect purchaser, such as plaintiffs here, can acquire no greater implied-warranty rights from the manufacturer than those originally bargained-for by the direct purchaser. While the indirect purchaser could bargain for additional implied warranties from the direct purchaser, those additional rights would have to arise from an agreement between the two purchasers. If the indirect purchaser seeks to enforce the manufacturer's implied warranty, then the indirect purchaser is limited to what the manufacturer and direct purchaser negotiated. See *Heritage Resources*, 284 Mich App at 641 & n 15.

Nor is there any real question that the language of paragraph 17 satisfies the statutory requirements for disclaiming the implied warranties of merchantability and fitness for a particular purpose. To disclaim the implied warranty of merchantability, the language of the disclaimer must mention "merchantability" and be "conspicuous." MCL 440.2316(2). To disclaim the implied warranty of fitness for a particular purpose, "the exclusion must be by a writing and conspicuous." *Id*.

The title of paragraph 17 is "**DISCLAIMER OF WARRANTIES**" and the text of the paragraph is in ALL-CAPS. The first sentence disclaims in plain English the implied warranty of "merchantability" and "fitness for a particular purpose," using those specific terms. The second sentence makes clear that there are "no . . . implied warranties." The appropriate terms are used, the operative language is clear and in writing, and the format makes the disclaimers conspicuous. Thus, paragraph 17 adheres to the disclaimer requirements of MCL 440.2316(2). Given this, a claim of breach of implied warranty would appear to be fatally deficient.

To counter this conclusion, plaintiffs argue that the implied warranties disclaimed in paragraph 17 were revived by operation of law because the express warranty and remedy provided in paragraph 18 failed of their essential purpose. "[A] warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer is entitled to seek remedies under the standard UCC warranty provisions." *Severn v Sperry Corp*, 212 Mich App 406, 413-414; 538 NW2d 50 (1995).

Plaintiffs explain that the feed supplements manufactured by defendant were not realistically subject to replacement because the products were consumed soon after delivery and the products damaged the herd upon consumption. Therefore, plaintiffs conclude that the "limited express warranty" remedy in paragraph 18—the promised replacement of any products sold or services provided—failed of its essential purpose. Plaintiffs argue that this failure revived the otherwise disclaimed implied warranties in paragraph 17.

Plaintiffs' argument is without merit. As explained earlier, plaintiffs did not make a breach of express warranty claim below, nor did they preserve the issue for appeal. Instead, they claimed breaches of implied warranties of merchantability and fitness. But, to state the obvious, to succeed on a claim of breach of implied warranty, a party must, among other things, be able to point to an actual implied warranty. And here, defendant effectively disclaimed any implied warranty in the Credit Agreement. As a matter of logic, once an implied warranty is effectively disclaimed, there can be no breach of that disclaimed warranty, regardless of whether the remedy for an express or other undisclaimed implied warranty is arguably deficient. See MCL 440.2316 cmt 2 ("If no warranty exists, there is of course no problem of limiting remedies for breach of warranty."). Simply put, once an implied warranty is effectively disclaimed, it cannot be revived by the inadequacy of some other warranty's remedy.

When interpreting this state's UCC, we may gain guidance from decisions of other jurisdictions interpreting similar model provisions. *Heritage Resources*, 284 Mich App at 632. Our conclusion is supported by comparable holdings in other jurisdictions. See, e.g., *FMC v Fin Corp v Murphree*, 632 F2d 413, 420 (CA 5, 1980) ("If there is no warranty because of a valid disclaimer, there is no problem of limiting warranty breach remedies."); *Ritchie Enterprises v Honeywell Bull, Inc*, 730 F Supp 1041, 1047-1048 (D Kan, 1990) ("Despite any argument that the limited remedy failed of its essential purpose, plaintiff is bound by the written exclusion of the express and implied warranties, and its only warranty claim is based on the express warranty" in the agreement.); *Earl Brace & Sons v Ciba-Geigy Corp*, 708 F Supp 708, 711 (WD Pa, 1989) ("There can be no breach where the warranty has been disclaimed . . . and no consequential damages where there is no breach."); *RJ Meyers Co v Reinke Mfg Co, Inc*, 885 NW2d 429, 439 (Iowa, 2016) ("[T]he failure of the repair and replace remedy for breach of the express warranty does not revive otherwise disclaimed implied warranties.").

In support of their position, plaintiffs rely on two decisions of this Court, *Kelynack v Yamaha Motor Corp, USA*, 152 Mich App 105; 394 NW2d 17 (1986), and *Severn*, 212 Mich App 406. Yet, both cases involved the question whether an express warranty covering defective parts with a remedy of repair or replace failed of its essential purpose. Neither decision held that a disclaimed implied warranty could be revived, and thus both decisions are inapposite to plaintiffs' claims here.

Accordingly, we affirm the trial court's grant of summary disposition to defendant.

E. TAXABLE COSTS

Plaintiffs next argue that the trial court erred by allowing defendant to tax costs that were not authorized by the statute. MCR 2.625(A)(1) provides that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." "The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority." *Guerrero*, 280 Mich App at 670.

Plaintiffs first object to the amount authorized for witness fees. Under MCL 600.2552(1) "[a] witness who attends any action or proceeding pending in a court of record shall be paid a witness fee of $12.00 for each day and $6.00 for each half day." Defendant originally requested

$12.00 each for four depositions, but, after plaintiffs pointed out that each of the four depositions only lasted half of a day, defendant agreed that the correct amount was $6.00 for each deposition. The trial court, however, did not adjust the amount to the half-day fee when it granted defendant's motion for costs. Thus, remand is necessary to correct the award.

Next, plaintiffs object to the costs allowed for the taking of depositions. Defendant requested $2,316.37 for the taking of depositions. Plaintiffs disputed this amount, arguing that there should be no taxable costs for the taking of depositions because the depositions were not read into evidence and were not filed with the clerk. The trial court disagreed and granted the request in full.

To tax costs for the taking of a deposition, the deposition must be (1) filed with any clerk's office, and (2) read into evidence at trial or when damages were assessed. MCL 600.2549. Although defendant asserts that the deposition transcripts were filed in the clerk's office, a review of the register of actions does not support this assertion. Furthermore, the record does not indicate that the depositions were read into evidence in the trial court. Thus, defendant was not entitled to any taxable costs for the taking of depositions.

Finally, plaintiffs argue that costs for service fees, mileage, and travel were improperly taxed under MCL 600.2559. Under this section, defendant requested $420.37 for mail fees and the trial court granted the request in full. The record indicates that defendant requested the amount to pay for certified mail and federal express fees to send documents to file with the clerk of the court. Because these documents were sent to the court, they do not qualify as "process or papers served *out of a court*." MCL 600.2559(1) (emphasis added). Thus, defendant has not shown that it is entitled to the costs related to these mailings.

The trial court also granted defendant's request for $392.03 for mileage and travel under this section for defense counsel's travel to certain depositions, hearings, and court proceedings. Nonetheless, this type of mileage and travel is not covered by MCL 600.2559. Defendant argues that the heading of MCL 600.2559 indicates that mileage may be taxed under this section. The catch-line heading for this section reads: "Fees for service of process; fee for process with incorrect address; mileage; fee for advertising; liability; charging fee in excess of law; tax costs; 'order for the seizure of property' defined." The heading, however, cannot be used to construe the statute. MCL 8.4b; *In re Lovell*, 226 Mich App 84, 87 n 3; 572 NW2d 44 (1997). To the extent that mileage is authorized in some of the subsections of MCL 600.2559, Subsection 1 makes clear that any mileage taxed under MCL 600.2559 must be related to out-of-court service of process or papers, and defendant has not shown that these fees were related to this type of service. Thus, because defendant has not shown that the mileage and travel fees were authorized by statute, defendant has not shown that the taxation of $392.03 was authorized by statute.

## III. CONCLUSION

In Docket No. 340150, we affirm the trial court's order granting summary disposition. In Docket No. 342990, we vacate the trial court's order taxing costs to the extent it allowed the taxation of improper expenses. On remand, the trial court shall modify the order taxing costs by

decreasing the amount of taxable costs from $3,331.20 to $178.43. Because no party prevailed in full on appeal, neither party may tax costs under MCR 7.219. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Michael J. Riordan
/s/ Amy Ronayne Krause