*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RON VANALSTINE and JOAN VANALSTINE,
doing business as ROLJOS DAIRY,

Plaintiffs-Appellants,

v

DIVERSIFIED FARMS, LLC,

Defendant-Appellee.

UNPUBLISHED
April 29, 2021

No. 351993
Clinton Circuit Court
LC No. 2018-011808-CK

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

In this action regarding the sale of allegedly defective cattle-feed supplements, plaintiffs appeal as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2013, plaintiffs entered into an oral contract with defendant for the purchase of cattle-feed supplements, at least two of which were manufactured by Land O'Lakes Purina Feeds, LLC (Purina). In a previous suit, plaintiffs made similar arguments against both defendant and Purina, although that case only resulted in a decision on the merits as against Purina. *VanAlstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 646-647; 929 NW2d 789 (2018). When the case reached this Court on appeal, a set of background facts were provided:

> Plaintiffs operate a dairy farm in Eaton County. [Purina] is a Minnesota corporation that manufactures and distributes animal feed and related products. [Defendant] is a distributor of those products in Michigan. In July 2008, [defendant] executed a Credit Application and Agreement (the Credit Agreement) with [Purina] that included a disclaimer of warranties and a remedy-limiting provision. Plaintiffs were not parties to the Credit Agreement.

> In early 2013, plaintiffs entered into an oral contract with [defendant] in which [defendant] agreed to supply [Purina]'s products to plaintiffs. The two

products at issue are a dairy-protein supplement and a dry-cow supplement, which are concentrates that are mixed with grain, haylage, and silage before being fed to dairy cattle. Plaintiffs also purchased from [defendant] a salt-and-mineral supplement commonly referred to as "SE-90," which was not [Purina]'s product. SE-90 was provided to the herd on a "free choice" basis, meaning that the cattle could eat as much or as little of it as they wanted.

Plaintiffs began to notice that the herd showed signs of sickness a few months after entering the oral contract with [defendant]. It was ultimately determined that the herd suffered from iodine toxicity. After performing tests of the feed, plaintiffs concluded that [Purina]'s products sickened the herd. [Purina] disagreed, arguing that the iodine toxicity came from another source, likely the SE-90.

Plaintiffs sued, alleging that [Purina]'s products caused iodine toxicity in plaintiffs' herd and, as a result, [Purina] breached the implied warranties of merchantability and fitness for a particular purpose under [Michigan's] Uniform Commercial Code (UCC)[, MCL 440.1101 *et seq*]. [Purina] moved for summary disposition under MCR 2.116(C)(10), arguing that it effectively disclaimed the implied warranties under the following paragraphs of the Credit Agreement:

> **17. DISCLAIMER OF WARRANTIES.** SUPPLIER EXCLUDES AND DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO ANY GOODS SOLD TO APPLICANT. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES, WHICH EXTEND BEYOND THE WARRANTIES EXPRESSLY STATED ON THE FACE OF ANY SUCH PRODUCT.

> **18. EXCLUSIVE REMEDY.** Applicant's sole and exclusive remedy for claims made against Supplier (including, without limitation, claims for breach of contract, breach of warranty, negligence, or strict liability) are limited to the replacement of any products sold or services provided. Supplier is not responsible and Applicant expressly agrees to hold Supplier harmless for any special, indirect, consequential, exemplary, incidental, or additional damages.

\* \* \*

Applying Michigan's version of the UCC, the trial court found that the disclaimer of implied warranties in paragraph 17 was effective because it adhered to the statutory requirements. Plaintiffs maintained that the remedy limitation in paragraph 18 failed of its essential purpose, thereby invalidating the disclaimer found in paragraph 17 and allowing them to recover under the standard warranty provisions of the UCC. The trial court disagreed, concluding that a failure of a

remedy does not revive effectively disclaimed implied warranties. Accordingly, the trial court granted [Purina]'s motion for summary disposition. [*VanAlstine*, 326 Mich App at 645-647.]

This Court ultimately affirmed the trial court's decision that Purina's disclaimer of implied warranties was enforceable and barred plaintiffs' claim for violation of those warranties against Purina. *Id*. at 651-654.

After losing on the merits against Purina, plaintiffs filed the present lawsuit against defendant, arguing that defendant breached the implied warranties of merchantability and fitness for a particular purpose, breached an express warranty regarding the ingredients in the dairy-protein supplement, and violated the Michigan Commercial Feed Law (MCFL), MCL 287.521 *et seq*. Defendant moved for summary disposition of those claims, arguing that Purina's disclaimer of the implied warranties barred plaintiffs' claims in that regard, that defendant and plaintiffs had not negotiated any express warranties, that plaintiffs' claims under the UCC were barred by the statute of limitations, and that the MCFL did not create a private cause of action. Plaintiffs argued that defendant could not benefit from Purina's disclaimer of implied warranties, that defendant created an express warranty by printing an ingredient list on the dairy-protein supplement that did not mention toxic levels of iodine, that the previous litigation tolled the statute of limitations long enough to make its current claim timely, and that the MCFL did contain language allowing for a private cause of action. The trial court considered those arguments and ultimately agreed with defendant regarding each issue, summarily disposing of all of plaintiffs' claims and dismissing the case. This appeal followed.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. Appellate courts will generally affirm a correct result, even if the trial court's reasoning was incorrect. *Mulholland v DEC Internat'l Corp*, 432 Mich 395, 411 n 10; 443 NW2d 340 (1989). "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). More specifically, "[w]hether a plaintiff has a cause of action under [a] statute presents a question of statutory interpretation, which we review de novo." *Pitsch v ESE Mich, Inc*, 233 Mich App 578, 586; 593 NW2d 565 (1999).

## III.  IMPLIED WARRANTIES

Plaintiffs argue that the trial court erred when it concluded that no implied warranties were created in the sale of cattle-feed supplements from defendant to plaintiffs.  We agree in part, but we conclude that any implied warranty was effectively excluded.

Article 2 of the UCC sets forth two relevant implied warranties.  Pursuant to MCL 440.2314(1):

> Unless excluded or modified ([MCL 440.2316]), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

There is no serious dispute that defendant's sale of cattle-feed supplements to plaintiffs constituted a sale of goods under Article 2 of the UCC.  MCL 440.2105(1); MCL 440.2102.  Defendant is undisputedly in the business of selling cattle-feed supplements to farmers.  Because the procedural posture of this matter is a review from summary disposition, and in the absence of any argument or evidence to the contrary, defendant appears to be a "merchant" within the meaning of MCL 440.2104(1) of the UCC.  The above implied warranty is therefore applicable unless it was disclaimed.

The second warranty is set forth in MCL 440.2315:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Plaintiffs argue that they discussed their need for cattle-feed supplements, for both milking cows and dry cows, with defendant.  However, plaintiffs' testimony reflects that they only worked with Paul Samp, who was described as a "nutritionist," regarding feed supplements.  Although plaintiff Ron VanAlstine thought Samp might have been paid in part by defendant, he conceded he did not actually know that.  Samp is actually a Purina employee.  Plaintiff Joan VanAlstine believed Samp worked for defendant because defendant sent Samp to talk to them when they began buying feed from defendant.  However, she admitted that any negotiations with defendant were conducted by Ron, and she never personally talked to defendant other than when Ron was present.  At a deposition for the prior appeal, Ron VanAlstine testified that it was common practice for feed companies to use nutritionists to formulate products for dairy farms.

Ron VanAlstine also admitted he had nothing to show that defendant had any input into the formulation of Purina's products.  Otherwise, he conceded that defendant did not even store Purina's products, but rather acted largely as a delivery agent.  At a deposition for the prior appeal, Ron VanAlstine testified that he had never heard of such a thing as a warranty with entities like defendant.  It is difficult to suppose that defendant would have been ignorant of the purpose for which plaintiffs purchased the cattle-feed supplements.  However, the evidence shows that plaintiffs relied on Purina's skill and judgment, not on defendant's skill and judgment.  The implied warranty set forth in MCL 440.2315 therefore cannot apply.

-4-

Defendant correctly argues that each of the above warranties may be disclaimed under Article 2 of the UCC pursuant to MCL 440.2316. Defendant observes that this Court previously established that Purina had properly disclaimed the above warranties in the credit agreement between Purina and defendant. *VanAlstine*, 326 Mich App at 653. This Court also agreed that Purina could enforce that disclaimer against plaintiffs because "[i]f the indirect purchaser seeks to enforce the manufacturer's implied warranty, then the indirect purchaser is limited to what the manufacturer and direct purchaser negotiated." *Id*. at 651. Notably, however, because defendant had been dismissed from the case before the appeal, this Court did not consider whether plaintiffs could claim violations of the implied warranties arising from the sale of the goods from defendant to plaintiffs. See *id*. at 650-654. Defendant argues that it can enforce and benefit from Purina's disclaimers under Article 2 of the UCC. We disagree.

Both MCL 440.2314(1) and MCL 440.2315 plainly indicate that the implied warranty is given by the seller, and by necessary implication, must be disclaimed (if at all) by the seller. There is simply no evidence that defendant made a disclaimer to plaintiffs. Defendant relies on this Court's holding that a manufacturer's disclaimer of implied warranties extends to a buyer who purchased the goods from a distributor. *VanAlstine*, 326 Mich App at 651. Specifically, this Court held that, "[i]f the indirect purchaser seeks to enforce the manufacturer's implied warranty, then the indirect purchaser is limited to what the manufacturer and direct purchaser negotiated." *Id*., citing *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 641 & n 15; 774 NW2d 332 (2009). Defendant seeks to take the second half of that quotation out of context. Under this Court's prior holding in *VanAlstine*, plaintiffs would not be able to enforce Purina's implied warranties against defendant, because Purina disclaimed those warranties. However, plaintiffs are no longer seeking to enforce Purina's implied warranties. Instead, they are suing to enforce defendant's implied warranties, which arose in the contract of sale between plaintiffs and defendant. Moreover, defendant's analysis of the previous opinion in *VanAlstine* misses the important point—Purina actually disclaimed the implied warranties, defendant did not.

Defendant also argues that its contention is supported by *Heritage Resources*, 284 Mich App at 641. We disagree. In *Heritage Resources*, the buyer claimed a breach of implied warranties by the manufacturer, not by the distributor. See *id*. at 618-629. This Court reasoned that "a remote purchaser is subject to the manufacturer's disclaimer of implied warranties in the same manner as is the original purchaser, and can acquire no greater implied-warranty rights from the manufacturer than the original purchaser can." *Id*. at 641. Again, plaintiffs are not now seeking to enforce Purina's implied warranties in Purina's contract with defendant, but rather defendant's implied warranties in defendant's contract with plaintiffs. Thus, the reasoning provided in *Heritage Resources*, 284 Mich App at 641, and *VanAlstine*, 326 Mich App at 651, simply is not applicable to this case. To the contrary, this Court noted that "even if [the manufacturer] had disclaimed the UCC implied warranties in its initial sale to [the distributor], new implied warranties could have arisen in the subsequent sale from [the distributor] to [the buyer]." *Heritage Resources*, 284 Mich App at 641 n 15. The panel in that case continued, noting that "the sales agreement between [the distributor] and [the buyer] sufficiently disclaimed any new implied warranties of merchantability and fitness for a particular purpose that otherwise would have been created by [the distributor]'s sale to [the buyer]." *Id*.

Nevertheless, defendant also argues[1] that any implied warranty was disclaimed independent of Purina's disclaimer. The implied warranty in MCL 440.2314(1)[2] arises by implication in the sale of goods, and therefore a new warranty was created by defendant when it sold the cattle-feed supplements to plaintiffs. However, MCL 440.2314(1) expressly provides that the warranty may be disclaimed pursuant to MCL 440.2316. We note that MCL 440.2316(2) requires any such disclaimer to be in writing and conspicuous, and no such conspicuous writing was provided here. However, defendant points out that pursuant to MCL 440.2316(3)(c), "an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade."

As noted above, plaintiffs' testimony indicates that defendant was little more than a delivery service. Notwithstanding admitted speculation that Samp might have been paid by both Purina and defendant, which their testimony regarding other manufacturers' nutritionists strongly undermines, plaintiffs clearly understood defendant to have otherwise had no involvement in the cattle-feed supplements beyond being a go-between and payment processor. Especially persuasive is plaintiff Ron VanAlstine's denial of ever having heard of a warranty with an entity like defendant. The evidence shows that there was a mutual understanding that the merchantability of Purina's cattle-feed supplements was entirely between plaintiffs and Samp and Purina. We conclude that the implied warranty under MCL 440.2314(1) was excluded pursuant to MCL 440.2316(3)(c).

We therefore conclude that the trial court arrived at the correct result in granting summary disposition as to plaintiffs' implied warranty claims.

## IV. EXPRESS WARRANTY

Plaintiffs argue that the trial court improperly granted summary disposition of their claim for violation of an express warranty. We disagree.

As discussed above, the parties do not dispute that Article 2 of the UCC applies to this case. Plaintiffs contend that an express warranty was created during the sale of the dairy-protein supplement from defendant to plaintiffs. Under MCL 440.2313(1)(b), "[e]xpress warranties by the seller are created" by "[a] description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." "An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself." *Heritage Resources*, 284 Mich App at 634. Here, plaintiffs contend that the description of the goods on the label that was printed on the dairy-protein supplement qualified as an express warranty. Plaintiffs reason that the label guaranteed that there would not be toxic levels of iodine in the supplement.

We agree with plaintiffs in part. The dairy-protein supplement delivered to plaintiffs bore a label containing an ingredient list, instructions for preparation, and the words "GUARANTEED

---

[1] Defendant helpfully clarified and articulated this theory at oral argument.

[2] As discussed, we conclude that the implied warranty in MCL 440.2315 does not apply.

-6-

ANALYSIS." Iodine was not mentioned in the ingredients. Any reasonable person reading such a label would immediately conclude that, as a substance not listed in the ingredients, iodine would not be present, or at least would not be present in any noteworthy amount. Thus, the label could have constituted an express warranty that no significant amount of iodine was present in the supplement. However, critically, for a description of the goods to be considered an express warranty, it has to be "made part of the basis of the bargain . . . " MCL 440.2313(1)(b). The ingredients in the dairy-protein supplement, however, was not a basis of the bargain between plaintiffs and defendant. Instead, there is no dispute among the parties that it was Purina that curated the product specifically for plaintiffs' farm. Consequently, the ingredient list on the dairy-protein supplement was not part of the basis of the bargain between plaintiffs and defendant in this case, and thus, did not qualify as an express warranty by defendant. *Id*. To the extent the label might have constituted an express warranty, it would have been an express warranty by Purina only. Consequently, the trial court properly granted summary disposition in favor of defendant regarding plaintiffs' breach of express warranty claim.[3]

## V. STATUTE OF LIMITATIONS UNDER THE UCC

Plaintiffs contend that the trial court erred when it held that plaintiffs' complaint was filed after expiration of the statute of limitations. We note that we agree, but because we uphold the trial court's grant of summary disposition as to plaintiffs' UCC claims on other grounds, we need not address this argument.

## VI. PRIVATE CAUSE UNDER THE MCFL

Plaintiffs assert that the trial court erred when it determined that the MCFL did not create a private cause of action. We conclude that plaintiffs' sole remedy for the injuries and damages claimed lie under Article 2 of the UCC, so we need not address whether the MCFL creates a private cause of action.

As discussed above, the parties' contract was for a sale of goods and fell under the auspices of Article 2 of the UCC. MCL 440.2102. Further, plaintiffs sought damages in the form of economic loss—deceased milking cows, decreased milk production in the cows that survived, and reduced reproductivity. Those damages were permitted as consequential damages under MCL 440.2715(2). "In *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 527-528; 486 NW2d 612 (1992), our Supreme Court expressly adopted the 'economic loss doctrine' and held that 'where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC . . . ' " *Citizens Ins Co v Osomse Wood Preserving, Inc*, 231 Mich App 40, 43; 585 NW2d 314 (1998). "Unlike some jurisdictions, the economic loss doctrine applies in Michigan even when the plaintiff is seeking to recover for property other than the product itself." *Id*. at 44, citing *Neibarger*, 439 Mich at 530.

---

[3] We therefore decline to consider defendant's alternative argument for affirmance that the dairy-protein supplement was not actually high in iodine. "[A]s a general rule, this Court will not entertain moot issues or decide moot cases." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted; alteration in original).

In the complaint plaintiffs filed in this case, they claimed damages in the form of, "loss of the fair market value of a significant portion of [] [p]laintiffs' herd, los[t] profits from reduced milk consumption [sic], fair market value of the loss of reproduced cattle, and other consequential damages." They claimed that those damages were caused by defendant's sale of tainted goods, the dairy-protein supplement and the dry-cow supplement. Notably, in *Neibarger*, 439 Mich at 516, our Supreme Court considered a case in which the plaintiffs claimed that the defendant sold it faulty milking equipment. The plaintiffs asserted that, after using the equipment, "their cattle became ill and died or had to be sold for beef because of their nonproductivity and unsuitability as milking animals, suffered a loss of milk production, had severe instances of mastitis, and experienced a loss of a portion of their udders." *Id*. (citation omitted). The plaintiffs in that case brought claims under the product-liability statutory scheme, seeking a more beneficial statute of limitations and a more forgiving discovery rule to establish an accrual date. *Id*. at 517. The Court held that this was not permitted, reasoning that because "the damages sought in these cases are economic losses resulting from the commercial sale of goods, the plaintiffs' exclusive remedies are provided by the UCC." *Neibarger*, 439 Mich at 537-538.

The Court's decision in *Neibarger* is both factually similar and legally binding for this issue. Although the plaintiffs in that case were seeking application of statutes related to product liability, and plaintiffs in the present case are seeking to enforce the MCFL, the legal reasoning in *Neibarger* still applies here. Plaintiffs' sole remedy for the economic damages caused by the sale of goods lies under Article 2 of the UCC. *Neibarger*, 439 Mich at 537-538. Although the parties did not argue this issue or raise this case, the trial court's grant of summary disposition on plaintiffs' claim under the MCFL was still proper for this reason. *Id*. We "will affirm the trial court's grant of summary disposition in favor of defendant[], as long as it was the correct result, albeit for the wrong reason." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 345; 941 NW2d 685 (2019).

Affirmed.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola