*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT HOEK and AMY HOEK,

Plaintiffs-Appellants,

UNPUBLISHED
December 22, 2022

v

JASON S. SCHNELKER and SCHNELKER, RASSI
& MCCONNELL, PLC,

Defendants-Appellees.

No. 358807
Kent Circuit Court
LC No. 20-002858-NM

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this legal malpractice action, plaintiffs[1] appeal as of right the trial court order granting defendants' motion for summary disposition under MCR 2.116(C)(7), premised on a release. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On April 6, 2020, plaintiffs filed a complaint alleging legal malpractice against defendants. They asserted that defendants provided legal advice regarding the sale of the assets of plaintiff's company, Fixture Finders, LLC or "OldCo." Plaintiff submitted that he founded OldCo in 2005 and worked at the company for more than 10 years. In 2015, defendants represented plaintiff in the sale of OldCo's assets to Fixture Finders (DE), LLC or "NewCo" through an asset purchase agreement effective April 3, 2015. Defendant gave advice and negotiated and aided in the preparation of the terms of NewCo's operating agreement. Plaintiff purchased 20% of NewCo

---

[1] Although Scott Hoek and Amy Hoek are the named plaintiffs, the cause of action arose from the legal representation involving the interpretation of the documents addressing the sale of Scott Hoek's business. Accordingly, the singular "plaintiff" refers to Scott Hoek only. Plaintiff was represented by defendants, attorney Jason S. Schnelker and his law firm, Schnelker, Rassi & McConnell, PLC. The singular "defendant" refers to Schnelker only.

through his investment company known as Hoek Investments, LLC (Hoek Investments). The remaining 80% equity interest of NewCo was owned by Hilco Merchant Resources, LLC (Hilco).

According to the NewCo operating agreement, a management investor member could sell his interest in NewCo at any time during the first three fiscal years and the value was computed as "fair market value" of the company and a multiplier "mutually agreed upon by the Members acting reasonably and in good faith." After three years, the operating agreement provided that the management investor purchase price would be determined by the company's "average net operating income," calculated by using the three-year period preceding the event triggering the purchase. According to the operating agreement terms, plaintiff had until December 31, 2017, to voluntarily quit and be bought out of NewCo with his assets calculated at fair market value instead of net operating income for the three preceding years.

Plaintiff alleged that he expressed his intentions to quit and his concern about his recovery of his investment to defendant in January 2016. However, it was asserted that defendant gave inaccurate advice regarding the terms of the buyout agreement and the timeframe to recover plaintiff's investment computed as fair market value. Although plaintiff allegedly followed defendant's advice to remain with the company to recoup his investment, NewCo terminated plaintiff on March 22, 2018 purportedly for cause, contending that plaintiff violated the non-competition provision of his employment agreement. It was further alleged that the company's net operating income was negative, and therefore, plaintiff's redemption value for his interest was zero. Plaintiff asserted that he lost nearly $1,000,000 by adhering to defendant's direction.

Plaintiff entered into settlement negotiations with Hilco. Hilco representatives objected to defendant's participation in the settlement talks because defendants represented Hilco in real estate and other matters. Consequently, plaintiff retained attorney Sean Fitzgerald to resolve the dispute with Hilco. In the fall of 2018, plaintiff expressed his concerns to Fitzgerald about defendant's legal interpretation and advice pertaining to the terms of NewCo's operating agreement as well as the charged attorney fees. Plaintiff met "face to face" with defendant, and they discussed defendant's legal representation. Defendant advised that he would notify his insurance carrier of plaintiff's claim. Despite plaintiff's knowledge of the suspect legal advice given by defendant, in February 2019, he entered into a settlement agreement with Hilco that contained a release covering all the company's current and former attorneys.

Over a year after the entry of the settlement, plaintiffs filed their legal malpractice action against defendants. Defendants moved for summary disposition, alleging that the legal malpractice claim was barred by the release that was governed by Illinois law. It was also claimed that the action was not brought by the real party in interest, specifically plaintiff's corporate entity Hoek Investments, this failure did not constitute a misnomer, and any attempted amendment was now time-barred. Plaintiffs opposed the dispositive motion, claiming that defendant violated the Michigan Rules of Professional Conduct (MRPC) that gave rise to a rebuttable presumption of negligence, and it was not the intention of the parties to release any legal malpractice claim. It was further alleged that defendants were not intended beneficiaries of the release, paid no consideration for the release, and the defense representation of notice to their insurance carrier may rise to the level of fraud.

After hearing oral argument on the motion, the trial court granted summary disposition in favor of defendants, citing the breadth of the plain language of the release as governed by Illinois law. Specifically, the settlement agreement executed by plaintiff fully and unconditionally released the current and former attorneys of Hilco. The trial court noted that defendant was a former attorney of Hilco and Hilco representatives expressly objected to defendant's continued representation of plaintiff, causing him to hire Fitzgerald. It was observed that plaintiff had the benefit of Fitzgerald's counsel during the negotiation and execution of the release when they were aware of the potential legal malpractice case against defendants. The trial court concluded that Hilco's purpose in executing the expansive release was to ensure finality and protect its employees from having to participate in litigation, and it accounted for this purpose in its consideration. And, there was a "carve-out" provision of the release that expressly listed claims that were not part of the release, such as employee pension and welfare plans. Although plaintiff was represented by counsel Fitzgerald, the malpractice action against defendants was not included in the carveout provision exempting such claims from the release. The trial court did not find a violation of the MRPC in light of plaintiff's representation by independent counsel and that the nature of the allegations, whether characterized as negligence or professional malpractice, were encompassed within the release.

The trial court inquired of the status of plaintiff Amy Hoek's claim of legal malpractice because she was not a party to the release. Plaintiffs' counsel agreed that her claim should also be dismissed because it was derivative of plaintiff's claim. The trial court indicated that it would not address the real party in interest argument in light of its ruling on the release issue. Plaintiffs' counsel did not request a ruling on the issue, stating that it was a "sensible approach." From the trial court's ruling, plaintiffs appeal.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). When a valid release of liability between the parties exists, summary disposition of a plaintiff's complaint is proper under MCR 2.116(C)(7). *Wyrembelski v City of St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996). When reviewing a motion brought under MCR 2.116(C)(7), this Court must consider the affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011).

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

## III. ANALYSIS

Plaintiffs contend[2] that the trial court erred in granting defendants' motion for summary disposition premised on the release. We disagree.

On February 21, 2019, a settlement agreement was entered between plaintiff (delineated as "Employee") and Hilco. The agreement provided, in pertinent part:

> 4. **Releases.**
>
> a. As of the Effective Date, Employee (and anyone claiming through him or on his behalf, including heirs and assigns), fully and unconditionally releases Hilco together with their current and former subsidiaries, parents, affiliates, predecessors, successors, members, agents, employees, officers, directors, attorneys, insurers, and representatives (collectively, the "Hilco Released Parties"), jointly and severally, from any and all liability, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorneys' fees, and other

---

[2] As an initial matter, we note that plaintiffs' brief on appeal does not comport with MCR 7.212(C)(6) and (C)(7). MCR 7.212(C)(6) requires that the statement of facts "be a clear, concise, and chronological narrative." Additionally, "[a]ll material facts, both favorable and unfavorable, must be fairly stated without argument or bias." *Id*. Further, the statement of facts must refer to "specific page references to the transcript, the pleadings, or other document or paper filed with the trial court" to identify the nature of the action and the rulings of the trial court. MCR 7.212(C)(6)(a), (e). MCR 7.212(C)(7) sets forth that "[f]acts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court." "Page references to the transcript, the pleadings, or other document or paper filed with the trial court must also be given to show whether the issue was preserved for appeal by appropriate objection or by other means." *Id*. Also, this Court's review is limited to the record filed in the lower court, and a party may not expand the record on appeal. *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 724-725; 909 NW2d 890 (2017). MCR 7.216(A)(4) allows the Court of Appeals to permit "amendments, corrections, or additions to the transcript or record."

Plaintiffs' brief on appeal refers to documentation that does not appear to be filed in the lower court record, including the deposition testimony of plaintiff Amy Hoek. Additionally, although plaintiffs refer to e-mail exchanges between plaintiff, defendant Schnelker, and Fitzgerald, those emails were not located in the record. Moreover, the statement of facts contains narrative paragraphs without any reference to the lower court record or pleadings and is not written without argument or bias. Defendants also submitted documentary evidence that was not presented in the trial court, specifically, the affidavit of Ian Fredericks of Hilco addressing his intent in negotiating the release. We do not consider documentary evidence that the parties failed to submit in the lower court record but limit our review to the language of the release and the documentary evidence submitted in the trial court as the parties did not seek expansion of the record on appeal, see MCR 7.216(A)(4).

legal responsibilities of any kind, nature, or type, whether known or unknown, matured or unmatured, whatsoever existing through the Effective Date.

        b.      The claims Employee releases includes, without limitation, the claims as defined in this Agreement, and all other claims existing through the Effective Date arising under any act, statute, constitution, regulation, executive order, ordinance, or the common law, including any claims for attorneys' fees and costs.  Without limiting the foregoing, Employee releases claims for:

        i.      any breach of or issues relating to the LLC Agreement, the First Promissory Note, the Second Promissory Note, and/or the Employment Agreement;

        ii.      violation of any written or oral contract, agreement, policy, benefit plan, retirement or pension plan, option plan, severance plan, insurance coverage, or covenant of any kind, or failure to pay wages, bonuses, employee benefits, other compensation, attorneys' fees, damages, or any other remuneration (including any equity, ownership interest, management fee, carried interest, partnership interest, distributions, dividends, or participation or ownership in any business venture related to the Hilco Released Parties);

        iii.      discrimination, harassment, or retaliation on the basis of any characteristic protected under law, including but not limited to race, color, national origin, sex, pregnancy, sexual orientation, religion, disability, marital or parental status, age, union activity, or other protected activity;

        iv.      denial of protection or benefits under any statute, ordinance, execution order, or regulation, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Family and Medical Leave Act, the Workers' Adjustment and Retraining Notification, the Employee Retirement Income Security Act of 1974, the Illinois Wage Payment and Collection Act, the Illinois Human Rights Act, the Michigan Elliott-Larsen Civil Rights Act, Michigan Persons with Disabilities Civil Rights Act, Payment of Wages and Fringe Benefits Act, Michigan Whistleblowers' Protection Act, Bullard-Plawecki Employee Right to Know Act, the Michigan Occupational Safety and Health Act, the Michigan Social Security Number Privacy Act, and the Michigan Internet Privacy Protection Act, or any other federal, state, or local statute, ordinance, or regulation regarding employment, termination of employment, or discrimination in employment, retaliation, or wage and hour issues; and/or

        v.      violation of any public policy or common law of any state relating to employment or personal injury, including but not limited to claims for wrongful discharge, defamation, invasion of privacy, infliction of emotional distress, negligence, fraud, and interference with contract.

The release does not waive rights provided by this Agreement or benefits (if any) that are accrued and vested under Hilco's tax-qualified employee pension and welfare plans, nor any rights, if any, he may have to unemployment insurance benefits or workers' compensation benefits. It also does not waive claims or rights that as a matter of law cannot be waived by this Agreement, including filing a charge with, testifying, or participating in an investigation conducted by certain government agencies. It does, however, waive Employee's right to monetary recovery if any agency (such as the U.S. Equal Employment Opportunity Commission) pursues any claim on his behalf.

c. Effective upon the transmittal of HMR [Hilco Merchants Resources, LLC] of the HMR Payment, Hilco releases and forever discharges Employee and his representatives, agents, assigns, insurers, attorneys, predecessors and successors in interest, heirs and assigns, from any and all liability, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorneys' fees, and other legal responsibilities of any form whatsoever, whether known or unknown, existing through the Effective Date.

d. Effective upon the transmittal by HMR of the HMR Payment, Hilco, on one hand, and Hoek Investments, on the other hand, release and forever discharge each other, and all of their current and former subsidiaries, parents, affiliates, predecessors, successors, members, agents, employees, officers, directors, attorneys, insurers, and representatives, from any and all liability, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorneys' fees, and other legal responsibilities of any form whatsoever, whether known or unknown, existing through the Effective Date.

e. Nothing contained herein shall prevent the Parties from enforcing the terms of this Agreement, including, but not limited to, filing suit to enforce the terms of this Agreement.

\* \* \*

13. **Successors and Assigns.** This Agreement governs the rights of, binds, and inures to the benefit of each Party, as well as their respective predecessors, successors, assigns, affiliates, parent companies, subsidiaries, officers, employees, directors, agents, attorneys, heirs, and spouses.

\* \* \*

17. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard for choice of law principles. Any litigation between the Parties arising out of or relating to this Agreement shall be filed solely in federal or state courts located within the boundaries of the United States District Court for the Northern District of Illinois, and the Parties consent to jurisdiction and venue in the federal and state

courts located within the boundaries of the United States District Court for the Northern District of Illinois.

The trial court applied Illinois law to this dispute as set forth in the settlement agreement. Indeed, when determining the law applicable to litigation, the parties' expectations must be balanced against state interests. *Vanalstine v Land O'Lakes Purina Feeds, LLC*, 326 Mich App 641, 648; 929 NW2d 789 (2018). The parties' choice-of-law provision should be applied if the issue is one that could have been resolved by an express contractual provision. *Id*. at 648-649. The parties choice-of-law provision will not be given deference if: (1) the chosen state has no substantial correlation to the parties or the transaction; (2) there is no reasonable basis for the selection of the chosen state's law; or (3) the application of the chosen state law would be contrary to the policy of the state with a materially greater interest and whose law would apply in the absence of a choice-of-law selection. *Id*. at 649. The parties do not dispute that Illinois has a substantial correlation to the transaction because it is the principal location of business for Hilco. Moreover, the parties to the settlement agreement, plaintiff and Hilco, expressly negotiated this contractual provision. And, it appears that general rules of contract construction applicable to releases is substantially similar between Michigan and Illinois law. Therefore, the trial court appropriately honored the parties' choice-of-law provision.

Questions of contract interpretation are reviewed de novo. *Pepper Constr Co v Palmolive Tower Condos, LLC*, ___ Ill App 1ˢᵗ ___, ___; 194 NE3d 991, ___ (2021). When construing a contract, the primary goal is to give effect to the intent of the parties. *Id*. When the language is clear and unambiguous, the court must determine the parties' intent premised solely on the plain language of the contract. *Id*.

"A release is a contract whereby a party abandons a claim to a person against whom that claim exists." *Whitehead v Fleet Towing Co*, 110 Ill App 3d 759, 762; 442 NE2d 1362 (1982); see also *Fuller Family Holdings, LLC v Northern Trust Co*, 371 Ill App 3d 605, 614; 863 NW2d 743 (2007). The scope and effect of a release is controlled by the intent of the parties. *In re Estate of Gallagher*, 383 Ill App 3d 901, 905; 890 NE2d 1249 (2008). The intent can be determined from the express language of the release in addition to the circumstances surrounding the transaction. *Id*. Although a release only operates to eliminate the claims contemplated by the parties when the release is executed, *unknown* claims are not defeated by general words of release. *Id*. But, general words in the release "are restrained in effect by the specific recitals contained in the document." *Id*. quoting *Fuller*, 371 Ill App 3d at 614.

Paragraph 4a of the settlement agreement expressly provided that plaintiff, as employee, fully and unconditionally released "Hilco together with their current and former . . . attorneys, insurers, and representatives . . . jointly and severally from any and all liability claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorneys' fees, and other legal responsibilities of any kind, nature or type, whether known or unknown, matured or unmatured, whatsoever existing through the Effective Date." According to the settlement, plaintiff released Hilco's current and former attorneys, and defendants formerly provided legal representation to Hilco. Indeed, it was proffered that defendants previously advised Hilco regarding real estate and other matters. In light of that prior representation, Hilco objected to defendants continued representation of plaintiff. Furthermore, a review of the plain language of the settlement agreement revealed a lack of an ambiguity in the terms and a lack of a dispute that

defendants previously represented Hilco. Accordingly, the trial court properly concluded that defendants were included in the release and the broad language of the release expressly stated it applied to all claims, which covered the legal malpractice action.

Consideration of parol evidence regarding plaintiff's personal review of the settlement agreement and his exchanges with successor counsel Fitzgerald further support that plaintiff was aware of the terms of the release and its application to defendants. Specifically, in his deposition, plaintiff testified to being satisfied with defendant's representation until October 2017, when it became apparent that counsel did not have a comprehensive understanding of the NewCo documents. In effect, plaintiff introduced Fredericks of Hilco to defendant because of defendants' preparation of the merger documents for NewCo. A relationship was forged between Fredericks and defendant such that defendant represented Hilco with regard to a non-compete agreement and real estate transactions in Grand Rapids. However, when the relationship between plaintiff and Hilco deteriorated, Hilco objected to defendant's continued representation of plaintiff as a conflict of interest. Consequently, plaintiff retained Fitzgerald to handle the settlement agreement.

In light of this testimony, plaintiff understood that he retained defendants to handle his purchase of the interest in NewCo and that this work introduced defendants to Hilco for which they performed other legal services. Plaintiff also was aware that when his relationship with Hilco deteriorated, and they attempted to resolve their dispute, Hilco's representatives objected to defendant playing a role in the negotiations. Therefore, plaintiff retained Fitzgerald. Under the circumstances, it is apparent that defendants were former attorneys of Hilco, and they were included as parties covered by the release despite not being expressly identified by name.

Further, plaintiff testified that he read the settlement agreement, and he understood it. Plaintiff admitted that Fitzgerald, his counsel, also read the agreement and was available to answer any questions about the agreement. When asked, "And when you agreed to settle this with Hilco, you understood you were fully apprised of the terms of the settlement?" plaintiff responded, "Yes."

It is further apparent from the documentation submitted by plaintiff that he was aware of the existence of the legal malpractice action against defendants (i.e., a known claim) prior to the execution of the settlement agreement on February 21, 2019. On November 30, 2018, plaintiff wrote Fitzgerald and expressed that he received "bad advice" from defendant addressing whether he had to wait for his anniversary date to resign. Later that same day, plaintiff indicated that he wanted to meet with defendant to discuss the representation and potential waiver of attorney fees. Fitzgerald advised plaintiff that if he intended to pursue a claim against defendant, insurance proceeds would cover plaintiff's losses incurred from the advice regarding the resignation date. On December 4, 2018, plaintiff sent Fitzgerald an e-mail advising that he had lunch with defendant, and they discussed the "possible insurance claim." Defendant advised plaintiff that he would reach out to Fitzgerald and meet with his business partners. Later that day, plaintiff e-mailed additional details of the conversation to Fitzgerald, specifically that defendant provided plaintiff with the "wrong dates" for determining the valuation. On December 7, 2018, plaintiff e-mailed Fitzgerald to advise that defendant formally gave his malpractice carrier notice of a possible claim.

Although the language of the release is plain and expansive, consideration of the parol evidence via plaintiff's deposition testimony and emails exchanged with Fitzgerald revealed that the legal malpractice action was known to plaintiff and Fitzgerald months before the settlement

agreement with Hilco was executed. Plaintiff testified that he read and understood the settlement agreement and had the opportunity to question Fitzgerald about it. Nonetheless, there was no attempt to ensure that the release would not preclude the filing of this legal malpractice action. At the conclusion of paragraph 4b of the settlement agreement, it was expressly noted that the release did not prevent plaintiff from filing claims pertaining to "benefits (if any) that are accrued and vested under Hilco's tax-qualified employee pension and welfare plans, nor any rights, if any, he may have to unemployment insurance benefits or workers' compensation benefits." Thus, as the trial court noted, there were exceptions to the release expressly "carved-out." Despite the exceptions, plaintiff and Fitzgerald did not request that the known legal malpractice action be included with the exceptions. The deposition testimony of the attorneys that prepared and participated in the drafting of the settlement agreement was not submitted in the trial court. Therefore, it is unknown whether Fitzgerald and plaintiff discussed the import of the release on the legal malpractice claim. But it is apparent that Hilco sought to prevent any and all future litigation that bore a correlation to plaintiff's employment relationship and its agents and attorneys.

Despite the plain language of the agreement, plaintiffs submit that defendants cannot take advantage of the terms of the release because defendant violated multiple provisions of the MRPC. But the MRPC provides:

**Rule 1.0. Scope and Applicability of Rules and Commentary**

(a) These are the Michigan Rules of Professional Conduct. The form of citation for this rule is MRPC 1.0.

(b) Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. In a civil or criminal action, the admissibility of the Rules of Professional Conduct is governed by the Michigan Rules of Evidence and other provisions of law.

The MRPC expressly provides that the violation of the rules does not give rise to a cause of action. Additionally, the trial court declined to find that the MRPC was violated in light of the facts that plaintiff was aware of the bad advice given by defendants and was represented by Fitzgerald. Indeed, a cause of action does not arise from a violation of the MRPC when the plaintiff is a sophisticated businessman who retains independent counsel to review his agreement. See *Tinsley v Yatooma*, 333 Mich App 257, 265-266; 964 NW2d 45 (2020).[3]

Plaintiffs contend that defendants' failure to provide consideration prevents them from relying on the release. They also submit that it was not the intention of the drafting attorney "Duffy" to include the legal malpractice claim in the release. As noted, plaintiffs failed to submit

---

[3] Although plaintiffs did not dispute that Illinois law governed this transaction, they failed to cite whether the MRPC had a commensurate counterpart and similar obligations governing licensed attorneys in Illinois.

legal authority in support of the consideration claim. The appellants may not merely announce a position and leave it to this Court to discover and rationalize the basis of the claims. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015). An issue is deemed abandoned when a party fails to cite legal authority in support of a position. *Id*.[4] Moreover, as the trial court noted, Hilco had an incentive to include indirect but related actors involved in plaintiff's employment in the release. Indeed, the goal of resolving the litigation would not be achieved if the release only covered immediate actors to the employment dispute. Consequently, Hilco and plaintiff, through his counsel Fitzgerald, presumably considered the number of individuals to be governed by the release in relationship to the settlement award. Under the circumstances, the trial court properly granted defendants' motion for summary disposition.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[4] Although the parties submitted that the attorneys that prepared the settlement did not intend to release this legal malpractice action, documentary evidence supported those assertions was not submitted in the lower court record. Additionally, the parties did not move to expand the record on appeal. See MCR 7.216(A)(4). Accordingly, plaintiffs' assertion is without record support. Finally, in light of our disposition of the release issue, we do not address the issue addressing the real party in interest. The trial court determined it was unnecessary to rule on the issue, and plaintiffs assented to that decision. See *In re Bazakis*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358276), slip op at 10, lv pending; *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016).